MO–KAN AIRPORT PASSENGER
SERVICE, INC., Appellant,

v.

CITY OF KANSAS CITY,
Missouri, Respondent.

No. WD 35455.

Missouri Court of Appeals,
Western District.

Jan. 29, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
April 2, 1985.

Application to Transfer Denied
May 29, 1985.

Charles C. Shafer, III, Charles C. Shafer, Jr., Kansas City, for appellant.

Richard N. Ward, City Atty., Nordahl E. Holte and Dan G. Jackson, III, Asst. City Attys., Kansas City, for respondent.

Before KENNEDY, P.J., TURNAGE, C.J., and DIXON, J.

TURNAGE, Chief Judge.

Mo-Kan Airport Passenger Service, Inc. applied for the renewal of six livery permits. After a hearing, the administrator of taxicabs denied the application. On appeal, the circuit court affirmed the denial.

On this appeal, Mo-Kan contends that the administrator of taxicabs was biased and prejudiced against Mo-Kan and did not accord it a fair hearing, the trial court erred in denying it a continuance, and the administrator's decision was not supported by competent and substantial evidence. Affirmed.

Mo-Kan, the holder of six livery permits issued by the City of Kansas City, applied for their renewal. The city ordinance regulating livery service defines a livery vehicle as: "A public Passenger vehicle with driver furnished, for hire only by written agreement at a charge per hour fixed in advance." The ordinance further provides that such vehicles are to be for hire only for continuous periods of two hours or more and they are not to cruise in search of patronage nor to park at any public place awaiting patronage which is not prearranged. Another ordinance provides that the driver of a livery vehicle shall not solicit passengers for transportation on any public way or at any public airport.

The renewal application and information submitted by Robert Baker, the president of Mo-Kan, indicated that Mo-Kan operated its livery service based on a fee schedule computed on a zone concept, based on dis-

tance traveled; and not on a per hour basis. At the hearing, Baker testified that his method of calculating fees was based on the distance of various points from Kansas City International Airport. He added that his service was primarily a non-scheduled service to and from the airport, but that he also provided service to churches and other civic organizations upon request.

Evidence introduced at the hearing revealed that Baker had been convicted of eleven ordinance violations for soliciting passengers in his livery vehicles.

The administrator's findings of fact included Baker's ordinance violations, and that Baker's fee schedule for using his livery vehicles was not based on a per hour rate, but was based on the length of travel between various points and the airport.

The administrator stated in her conclusions of law that after the hearing, she went to Crown Center Hotel to observe livery and taxicab activity and was solicited by a Mo-Kan driver for a discounted fare trip to the airport. She concluded that this simply reinforced the evidence presented at the hearing regarding Mo-Kan's livery service operation.

Mo-Kan first contends that it did not receive a fair hearing before the administrator because she was biased and prejudiced, in that she was the supervisor of the special investigator who had investigated the activity of Mo-Kan prior to the hearing, and who then presented evidence on the City's behalf at the hearing. Mo-Kan further charges that the administrator abandoned her role as an impartial arbitrator and failed to give it a fair hearing.

■ The special investigator's participation in the hearing, even though he was employed by the City and worked under the administrator, is analogous to cases involving termination of teachers and the presentation of evidence by the school board's attorney. In *Harrisburg R-VIII School District v. O'Brian*, 540 S.W.2d 945, 950[4] (Mo.App.1976), this court held that the active participation on behalf of the board of education by its regular counsel did not

render the hearing unfair. In that case, the counsel was hired by the board and was responsible to it. In *Ross v. Robb*, 662 S.W.2d 257, 260[5–7] (Mo. banc 1983), the court held that the active participation of the school board's attorney in the conduct of the hearing does not deprive one of a fair trial, absent a showing in the record that the board heard the evidence with an unbendable or preconceived notion. In this case, the special investigator was responsible to the administrator and presented evidence to the administrator at the hearing. Those facts alone did not render the hearing unfair, and the record does not indicate that the administrator heard the evidence with an unbendable or preconceived notion.

■ Mo-Kan further contends that the hearing was unfair because the administrator had prior knowledge of the case because the special investigator had investigated Mo-Kan prior to the hearing and had talked with the administrator about Mo-Kan. Again, this is analogous to the position the school board occupies in termination hearings. The board, of necessity, is informed of the charges prior to the commencement of termination proceedings. In those cases, the board is informed of certain facts in order to make an informed decision on the commencement of the termination procedure. The record does not reflect that the administrator in this case played any different role. In *Ross*, the court held that an administrative body which initiates a charge and then tries such charge does not alone vitiate the proceedings, if judicial review is provided. 662 S.W.2d at 260[5–7]. In this case, an ordinance does provide for judicial review.

■ Mo-Kan alleges that at one point in the hearing, the special investigator stated that he wanted to consult with the administrator before he continued the presentation of his case. However, Mo-Kan fails to point out that the administrator declined the request and the hearing continued without any consultation. A review of the record shows that the administrator con-

ducted the hearing fairly, reasonably, and properly.

■ Mo-Kan also attacks the propriety of the administrator's trip to Crown Center to observe the taxicab and livery service activities. In *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 530, 66 S.Ct. 687, 695, 90 L.Ed. 821 (1946), the court stated that the mere fact that an administrative body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result. Here, the administrator obviously sought to confirm the evidence that Mo-Kan was in fact soliciting passengers in violation of the ordinance regulating the type of service Mo-Kan was authorized to offer to the public. While the administrator would have been better advised to have refrained from undertaking a fact-finding mission, Mo-Kan fails to demonstrate substantial prejudice. The record showed that Mo-Kan had eleven convictions for soliciting passengers while it held a livery permit. Not only was that evidence in the record, but Baker testified that he had pleaded guilty to soliciting passengers. Thus, the administrator's personal fact-finding mission added nothing to the record and did not result in substantial prejudice.

■ Mo-Kan next contends that the trial court erred by denying it a continuance which it requested in order to conduct discovery. At the time of the request, the case had been pending in circuit court for fifteen and one-half months, and Mo-Kan had made no effort to conduct discovery. The trial court is vested with a broad discretion in controlling the docket, the progress of litigation, and the grant or refusal of a continuance. Its action will not be set aside unless the discretion vested in it is shown to be abused by arbitrary or capricious exercise. *Commerce Bank of Mexico, N.A. v. Davidson*, 667 S.W.2d 474, 476[1, 2] (Mo.App.1984). No abuse of discretion is shown.

■ Mo-Kan finally contends that the decision is not supported by competent and substantial evidence. The recital of evidence heretofore set out shows that Baker admitted that he based his fees on a zone charge, rather than an hourly charge as required under the livery ordinance. Baker thus admitted he was not in fact operating a livery service and did not intend to do so in the future, but was in fact operating as a taxi service. He neither held nor applied for a taxi permit. This alone was sufficient to support the denial of the permits. Baker's admission that he had pleaded guilty to soliciting passengers in violation of his permit further demonstrated that Mo-Kan had used its permits contrary to the ordinance and was thus not entitled to their renewal.

The judgment is affirmed.

All concur.