Linda L. CALVIN,
Plaintiff–Respondent,

v.

The JEWISH HOSPITAL OF ST.
LOUIS, Defendant–Appellant.

No. 52838.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 15, 1988.

Park G. Carpenter, Michael J. McDonnell, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for defendant-appellant.

Morris B. Chapman, Morris B. Chapman & Associates, Ltd., Granite City, Ill., Mor-

ris B. Kessler, Kessler & Kessler, St. Louis, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Plaintiff instituted this action seeking damages for personal injuries allegedly caused by medical malpractice. Jewish Hospital of St. Louis, Dr. Barry L. Samson and his employer, Metropolitan Orthopedics Limited, a professional corporation, were defendants. At the close of all the evidence, the trial court sustained motions for directed verdicts in favor of Dr. Samson and Metropolitan Orthopedics (hereinafter referred to in the singular as defendant Samson); plaintiff has not appealed this judgment. The jury found against defendant Jewish Hospital and assessed plaintiff's damages at $500,000.00. The hospital appeals the jury's decisions. We reverse and remand.[1]

On November 16, 1983, plaintiff filed this action against the three defendants alleging that as a result of specific negligent acts and omissions she sustained paralysis of her arm while undergoing a surgical laminectomy on her lumbar spine "and/or" during the immediate post-operative period. In April, 1984, plaintiff's attorney engaged the services of Dr. Byron Genner, a Potomac, Maryland, orthopedic surgeon who primarily works as a consultant in medical malpractice cases. In his deposition Dr. Genner testified that the nerve injury to plaintiff's arm could have resulted from improper positioning during surgery, an improper injection into the arm, draping the arm over the bedrail after surgery, or a viral infection of the brachial plexus. He was unable to say which of these possibilities actually caused plaintiff's injury. On November 5, 1985, plaintiff filed an amended petition which omitted the allegations of specific negligence and alleged that her paralysis "would not have occurred in the ordinary course of events had not [the defendants] negligently and carelessly failed to use proper care during the operation and its attendant treatment." The late Judge George A. Adolf overruled defendants' motions to dismiss and for a more definite statement.

After taking Dr. Genner's deposition, all defendants moved for summary judgment. On June 13, 1986, Judge Adolf denied these motions "without prejudice to defendant's right to raise these issues at trial." The case was set on the trial docket for September 29, 1986. On September 15, 1986, plaintiff amended her interrogatory answers by naming two additional expert witnesses. On September 22, 1986, Dr. Samson likewise endorsed a new expert witness. On September 24, 1986, five days before the date set for trial, Judge Adolf overruled cross-motions to preclude the testimony of the newly named experts provided these witnesses could be deposed before the trial scheduled for the next week. An earlier order had required plaintiff and defendants to respectively name all experts no later than 90 and 60 days before trial.

On September 25, 1986, the parties deposed Dr. Samson's new expert, Dr. E. Robert Schultz. He opined that the cause of plaintiff's injury was a hypodermic injection administered into plaintiff's radial nerve by a nurse employee of the hospital on the day after the surgery; he ruled out other possible causes. This was the first expert medical testimony disclosed in discovery which isolated a particular incident and identified a party as the cause of plaintiff's injury.

For reasons not apparent from the record before us, the case was not reached for trial during the week of September 29, and Judge Adolf ordered the case specially set for trial on December 1, 1986. On November 13, 1986, Jewish Hospital supplemented its answers to interrogatories by naming Dr. William J. Powers as an expert

---

1. We deny plaintiff's motion to dismiss the appeal as untimely. The legal file contains an order signed by Judge Brendan Ryan, the Presiding Judge of the Twenty Second Judicial Circuit, which records that Jewish Hospital filed the Notice of Appeal, the filing fee, and an approved appeal bond on February 13, 1987, eight days after the court overruled defendant's motion for a new trial. The fact the circuit clerk did not stamp "filed" on the face of the Notice of Appeal until February 19, 1987 or record the filing on the divisional judges' docket sheet until that date does not prevail over Judge Ryan's order. Rule 43.01(h).

"who may testify on the subjects raised by Dr. Schultz." The hospital offered the other parties an opportunity to take Powers' deposition. Rather than accept this offer, plaintiff promptly moved to preclude the testimony of Dr. Powers on the ground that Jewish Hospital did not seasonably disclose his potential use as an expert witness. On November 20, 1986, Judge Adolf sustained this motion. Nothing in Judge Adolf's order, in plaintiff's brief, or in the record explains the inconsistency between the order promulgated four days before the original trial setting, which granted plaintiff and Dr. Samson leave to name additional experts, and the order denying similar leave to Jewish Hospital eleven days before the next trial setting.[2]

On December 1, 1986, the hospital filed alternative motions to allow the testimony of Dr. Powers, a motion to preclude the testimony of Dr. Schultz, and a motion for a continuance. Judge Adolf overruled all three motions and assigned the case to Judge James S. Corcoran for trial. Jewish Hospital presented the three motions to Judge Corcoran who refused to entertain them because Judge Adolf had already ruled upon them. In order to preserve the record, counsel for the hospital made an offer of proof; all the parties agreed to the form of the offer. It was submitted that if permitted to testify Dr. Powers would rule out the possibility of injection damage to the radial nerve as the cause of plaintiff's injury and would express his opinion that the cause of plaintiff's radial nerve dysfunction was brachial plexus neuropathy. He would further testify that of the possible causes listed by other witnesses, only a stretching injury of the brachial plexus caused by positioning during surgery was compatible with the location and extent of the dysfunction.

## I.

■ The broad discretion vested in the trial court to control its docket, the progress of litigation including pre-trial dis-

covery, and the granting or refusal of a continuance will not be disturbed on review unless appellant shows an arbitrary or capricious exercise and abuse of discretion. *Mo–Kan Airport v. Kansas City,* 689 S.W. 2d 641, 644 (Mo.App.1985). For a judge, with no express or apparent distinction, to excuse two parties from compliance with an order of court but to enforce the same order on a third party can only be described as arbitrary. Despite its order prohibiting endorsement of expert witnesses within sixty days of trial, the trial court here permitted plaintiff to name two experts disclosed thirteen days before a trial setting and permitted defendant Samson to name one expert disclosed ten days before trial. The court denied Jewish Hospital's attempt to name an expert disclosed 17 days before the next trial setting. The court ordered plaintiff and Samson to make their proposed witnesses available for deposition; Jewish Hospital volunteered to do likewise. Nothing in the record shows any reason for plaintiff's and Samson's untimely disclosure of their respective witnesses prior to Schultz's deposition. The case had been pending for almost three years without any party presenting evidence pinpointing a particular event or a specific act as the cause of plaintiff's injury. By comparison, Jewish Hospital disclosed its intention to use testimony to rebut this opinion within six weeks.

■ The purposes of discovery are to aid litigants in determining the facts prior to trial, to eliminate concealment and surprise, and provide litigants with access to information pertinent to their case. *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 328 (Mo.App.1985). When belated compliance with discovery rules creates the very surprise the rules are intended to eliminate, fairness and justice demand that the adversary be given an opportunity to meet the new evidence. Had this case been reached for trial during the week of September 29, four days after Dr. Schultz' deposition testimony radically changed the anticipated evidence, a denial of the hospital's request

**2.** Jewish Hospital sought relief from this court by filing a petition for writ of prohibition on November 21, 1986. The denial of this petition

has no precedential value as to the merits of the controversy. *State ex rel. P.A.C.C.S., P.A. v. Ryan,* 728 S.W.2d 598, 602 (Mo.App.1987).

for a continuance would undoubtedly have been an abuse of discretion. *See Missouri Public Service Company v. Argenbright,* 457 S.W.2d 777, 785 (Mo.1970); *Wintz v. Hyatt Hotels Corp.,* 687 S.W.2d 587, 590–91 (Mo.App.1985). By precluding the hospital from using Dr. Powers to rebut Dr. Schultz' testimony, the court effected the same prejudicial injustice: depriving a party surprised by last minute disclosures of an opportunity to confront new and unanticipated evidence. The exercise of judicial discretion "should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage." *Ellis v. Union Elec. Co.,* 729 S.W.2d 71, 76 (Mo.App.1987). This case represents the converse of that principle.

Moreover, plaintiff's attorney exacerbated the prejudicial impact of Dr. Powers' exclusion when he stated in the final stage of his closing argument to the jury:

> You think for one moment that this hospital with the access that it has to medical witnesses wouldn't have brought a parade of doctors in here, given them a hypothetical question—
>
> MR. CARPENTER: Let me make my objection.
>
> MR. CHAPMAN: Sure. I would ask you to make it off the record.

In the bench conference which ensued, the hospital's attorney asked that the jury be instructed to disregard the statement concerning access to medical witnesses because he was prevented from introducing expert medical testimony by the ruling on the plaintiff's pre-trial motion. The court overruled the objection. Plaintiff's attorney resumed his argument and subsequently added:

> I submit, if this hospital with all its medical abilities and facility couldn't bring somebody in here, one doctor, and state a hypothetical and say this came from a neuropathy, it didn't come from a shot in the arm, then I don't know who could. And there isn't a single bit of evidence to support any of this conjecture that he has introduced in this case.

■ When a witness' testimony is excluded on an attorney's motion, it is misconduct constituting manifest injustice and thus reversible error if that attorney requests the jury to draw an adverse inference from his opponent's failure to produce that witness even though the error is not preserved for appellate review. *State v. Hammonds,* 651 S.W.2d 537, 539 (Mo.App. 1983). Similarly, in *State v. Price,* 541 S.W.2d 777, 778–79 (Mo.App.1976), when the defense properly objected to the argument regarding adverse inferences from the failure to produce excluded witnesses the court implicitly approved the argument by overruling the objection and thus a new trial was necessary. Manifest injustice also results when a prosecutor comments on a defendant's failure to produce a document which the court has excluded on the prosecutor's objection. *State v. Luleff,* 729 S.W.2d 530, 536 (Mo.App.1987).

Plaintiff's attorney knew his motion to exclude was the only reason Jewish Hospital had not presented expert medical testimony that plaintiff's injury resulted from brachial plexus neuropathy. The attorney's argument in *Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d 786 (Mo. banc 1983), was much less egregious. There, counsel's closing argument attempted to draw an adverse inference from defendant's failure to call one of its employees as a witness. Because plaintiff's attorney had taken the deposition of the witness and had discovered that the employee knew so little about the incident except through hearsay that his testimony would have been meaningless, the Supreme Court found that overruling an objection to the argument was prejudicial error and ordered a new trial. *Id.* at 791.

We have previously noted that inconsistent rulings upon the late disclosure of expert witnesses was an arbitrary abuse of discretion. Permitting, indeed implicitly approving, the argument that the hospital could not obtain the very evidence it attempted to introduce compounded the prejudice resulting from the unequal pre-trial rulings. Fundamental fairness mandates remanding this case for a new trial.

## II.

Having determined that the hospital is entitled to a new trial, we turn to the assertion that plaintiff failed to make a submissible case on the pleaded and submitted theory of res ipsa loquitur. Jewish Hospital argues that plaintiff was precluded from submitting her case on this theory because either she failed to prove the hospital's exclusive control or, by adopting Dr. Schultz' testimony, she proved specific negligence. Examination of these contentions requires a discussion of the doctrine of res ipsa loquitur particularly with regard to its application to medical malpractice cases.

The seminal case in Missouri addressing this issue is *Hasemeier v. Smith*, 361 S.W. 2d 697, 700 (Mo. banc 1962), wherein the Supreme Court stated:

> Res ipsa loquitur is a rule of evidence whereby a submissible issue of negligence may be made by adducing a particular kind of circumstantial evidence, viz., by showing the fact of an occurrence which, because of its character and circumstances, permits a jury to draw a rebuttable inference, based on the common knowledge or experience of laymen, that the causes of the occurrence in question do not ordinarily exist in the absence of negligence on the part of the one in control.
>
> "Generally, the doctrine of res ipsa loquitur is not applicable in malpractice cases," and only in unusual circumstances may a physician or surgeon be found guilty of a failure to exercise the requisite degree of care in the absence of expert medical testimony tending to so prove. *Williams v. Chamberlain*, Mo., 316 S.W.2d 505, 511 [1958]. Thus it has been held that no inference of negligence arises (and that the res ipsa loquitur rule is not applicable) from the fact alone that an unfavorable result ensues from treatment or surgery even though the unfavorable result may be a rare one in the particular case....
>
> \*　\*　\*　\*　\*　\*

There is a line of cases in which various courts have held the res ipsa loquitur rule applicable where the patient receives, during the course of an operation or medical treatment, especially if the patient is unconscious, an unusual injury; that is, for example, an injury to an unaffected portion of the body, i.e., one unconnected with the area of the operation or treatment.

Although the *Hasemeier* statement regarding an injury to an unaffected part of the body sustained by the unconscious patient is obiter dictum, that principle was adopted in *Swan v. Tygett*, 669 S.W.2d 590 (Mo.App.1984). In *Swan*, an anesthetized plaintiff awoke from a procedure to cauterize vaginal tissue and found a burn on her chest. We believe the evidence in this case, that plaintiff awoke after lower-back surgery and found dysfunction in her right arm, similarly permits an inference of negligence.

Jewish Hospital argues that because the evidence is susceptible of establishing that plaintiff's injury was sustained either during surgery, while she was under Dr. Samson's control, or during post-operative recovery, while she was under the hospital's control, plaintiff has failed to prove the element of exclusive control essential to the invocation of the res ipsa loquitur doctrine. Our Supreme Court rejected a similar contention in *Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo. banc 1983), where it held that "[n]o valid objection to the application of the [res ipsa loquitur] doctrine can be made here on the ground of there being two defendants." Bearing in mind the defendant's superior knowledge or means of information as to the cause of the occurrence, the Supreme Court concluded that showing an unusual malfunction which would not normally occur without negligence of the *parties* in charge makes a submissible res ipsa case. *Id.* Similarly, in this case the anesthetized plaintiff, without knowledge or means of information concerning the cause, awoke to find a physical disability which was unrelated to the surgery and which would not normally occur without negligence of the parties in control of her unconscious body. Plaintiff should not be deprived of the inference of negligence arising from such circumstanc-

es merely because during her unconscious state she was under the control of more than one person. Both defendants have superior knowledge and means of information. Either defendant could point to a specific cause of the unusual occurrence for which he or it is not responsible or present evidence to show that a cause attributable to him or it is not viable. Such a showing would tend to dispel the inference of negligence insofar as that defendant is concerned. Thus the fact that there are two defendants does not impose any greater difficulty upon either of them to rebut the inference of negligence arising from the unusual occurrence while they were in control of the unconscious plaintiff.

 The basis of the hospital's alternative argument is that plaintiff was precluded from submitting her case under the res ipsa doctrine because she proved specific negligence. *See Racer v. Utterman*, 629 S.W.2d 387, 397 (Mo.App.1981). The hospital claims that by introducing portions of Dr. Schultz' deposition plaintiff made him her witness and is bound by his later testimony regarding the specific negligence of the hospital nurse.[3] Assuming Dr. Schultz became plaintiff's witness, a party is bound only by the uncontradicted testimony of his own witnesses. *In Re Estate of Danforth*, 705 S.W.2d 609, 610 (Mo.App.1986). As noted above, there was expert testimony on several possible causes of plaintiff's injury. A plaintiff who sustains an injury as a result of an unusual occurrence is not precluded from submitting his case under the res ipsa doctrine merely because the evidence shows the occurrence could have been caused by any one of several different acts of specific negligence. *See Cremeens v. Kree Institute of Electrolysis*, 689 S.W. 2d 839 (Mo.App.1985). Moreover, even if the submission of the case on the theory of res ipsa loquitur was improper, where the "record shows circumstances from which inferences of specific negligence might be drawn, rather than reversing outright we are justified in remanding the case for a new trial." *Long v. Spanish Lake Service, Inc.*, 507 S.W.2d 935, 939 (Mo.App.1974) (citing *Cudney v. Midcontinent Airlines*, 363 Mo. 922, 254 S.W.2d 662 (1953)).

We need not address Jewish Hospital's charges of instructional error as they may not recur on re-trial.

The judgment is reversed and the cause is remanded for a new trial as to defendant Jewish Hospital.

SATZ, C.J., and SIMEONE, Senior Judge, concur.

---

3. During plaintiff's case her attorney was permitted to read to the jury selected excerpts from Dr. Schultz' deposition. Defendant attempted to read the remainder of the deposition testimony at that time. The trial court denied this offer, stating it should wait until defendant's case. This ruling was erroneous. *Burrous v. American Airlines, Inc.*, 639 S.W.2d 263, 267 (Mo.App. 1982). "[T]he introduction of a deposition or a part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party, unless the deponent is the adverse party." *Coulter v. Michelin Tire Corp.*, 622 S.W.2d 421, 433 (Mo.App.1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982).