Nell and Michael BARNES, Respondents,

v.

Bernard KISSELL, Appellant.

No. WD 46589.

Missouri Court of Appeals,
Western District.

July 20, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Norman I. Reichel, Jr., Kansas City, for appellant.

Anita Porte Robb, Kansas City, for respondents.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

This case arises out of an automobile accident which occurred on August 4, 1988. Plaintiffs/Respondents filed suit on April 30, 1990, for personal injuries sustained by Nell Barnes, and for loss of consortium claimed by her husband, Michael Barnes. Defendants/appellants liability for the accident was not seriously disputed, leaving causation and extent of her injuries as the real issue at trial. As a result of the accident, Mrs. Barnes sustained various injuries, including a back injury. The dispute centers on the extent of her injuries, which included a lifting incident on November 8, 1988, some three months after the accident. The original allegations were grounded solely in negligence. Shortly before trial, plaintiffs amended their petition and alleged acts constituting willful conduct and requested punitive damages. In August 1991, the case was set for trial on March 30, 1992. The jury returned a verdict in favor of the Barnes and assessed damages in the amount of $287,601.34 for Mrs. Barnes and $15,000 for Mr. Barnes. The jury then deliberated on the punitive damage claim and returned a verdict of $0. Subsequently, a judgment was entered for $369,913.14, which included pre-judgment interest. This appeal followed.

The facts, as they pertain to our decision, are as follows. On May 15, 1991, defendant filed a motion to compel a medical examination of Mrs. Barnes to be conducted by Dr. Joseph Lichtor. On May 22, 1991, plaintiffs filed a response challenging Dr. Lichtors objectivity and veracity based on a report he had made concerning Mrs. Barnes medical condition previous to examining her. The plaintiff also challenged Lichtors competence to testify. No hearing on Dr. Lichtors objectivity was held. On December 31, 1991, the court overruled defendants motion to compel the examination.[1]

The attorneys made efforts to schedule another statutory medical examination, which was finally accomplished on February 4, 1992. The parties agreed to a medical exam-

---

1. The court's ruling gave no reason for its decision except that it recites it was made "after examining Plaintiff's extensive suggestions in op-position." *See State ex rel Metropolitan Transportation Services, Inc. v. Meyers,* 800 S.W.2d 474, 476 (Mo.App.1990).

ination by Dr. Victoria Cook, subject to plaintiffs requirement that defendant submit a written description of the manner, condition, and scope of the examination as required by Rule 60.01 of the Missouri Rules of Civil Procedure. When a dispute arose on February 23, 1992, concerning the sufficiency of defendants compliance with this request, the defendant filed a motion to compel a medical examination by Dr. Cook. The court denied this motion on February 27, 1992, because of defendants failure to comply with Rule 60.01. On March 5, defendant filed a motion for reconsideration of the courts order overruling his prior motion for a medical examination by Dr. Cook, with a proposed examination date of March 25, 1992. The defendant then described in greater detail the "conditions, and scope of the examination." Plaintiffs attorney expressed satisfaction with the description and on March 11, 1993, the court ordered the examination. The exam was ordered for March 25; in the meantime, the parties had agreed to March 10.

On February 11, 1992, during the dispute concerning Dr. Cook's examination, plaintiffs filed a motion to amend their petition to add a claim for punitive damages, alleging that additional information obtained through discovery supported such a claim. The punitive damages claim was based on defendants blood alcohol content. On February 25, the defendant filed suggestions in opposition arguing that plaintiffs had knowledge of this information before the petition was filed. That same day, the court granted plaintiffs motion to amend.

The March 10 examination by Dr. Cook was by agreement. When Mrs. Barnes appeared at Dr. Cooks office for the exam, she refused to allow the examination to proceed unless her husband was allowed to attend the exam with her.[2] After exchanging phone calls, counsel for the parties agreed that Mr. Barnes would be allowed to sit in on his wife's examination. When the exam proceeded, Mr. Barnes remained in the examining room while the doctor took her medical history. Dr. Cook misunderstood the agreement between counsel for the parties and, as a

result, Mr. Barnes was asked to leave prior to the physical examination, which he did without objection.

On March 17, 1992, plaintiffs filed a motion to strike Dr. Cook as an expert witness, citing as reasons, a "breach of agreement" to allow Mr. Barnes to be present during his wife's examination and a charge of unlawful avoidance of service of process by Dr. Cook in connection with process served for plaintiffs deposition. In their motion to strike Dr. Cook, plaintiffs also requested that Dr. Lichtor be stricken as an expert witness. The courts order of December 31, 1991, had refused to allow Dr. Lichtor to examine Mrs. Barnes, but the court had not stricken Dr. Lichtor as a witness. Defendant had expressed his intent to use Dr. Lichtor to testify from medical records if the court were to strike Dr. Cook.

The evidentiary hearing on plaintiffs motion to strike Dr. Cook was held on March 25, 1992. On the issue of Mr. Barnes exclusion from his wife's physical examination, all agree that the attorneys agreement was to allow Mr. Barnes to remain for the entire examination. Upon Dr. Cook's request, he left the examining room at the conclusion of the history report. No protest was voiced by either plaintiff. On this point, the court found that Dr. Cook asked Mr. Barnes to leave because of a misunderstanding of counsel's agreement.

On the issue of whether Dr. Cook avoided service of process, testimony was heard from plaintiff's process server, who claimed Dr. Cook avoided him for approximately four hours. Admittedly, the process server was attempting service at Dr. Cook's office while she was attending to her regular schedule of patients. However, process was served on Dr. Cook later that same day.

At the close of the hearing, the court struck Dr. Cook as an expert witness. The main reason cited by the court for the ruling was the breach of the parties agreement that Mr. Barnes be allowed to attend his wife's entire medical exam. A second reason given by the court was that the witness attempted

---

**2.** The reason Mrs. Barnes gave for wanting her husband present was that she was skeptical of

Dr. Cook since Dr. Lichtor had already produced an unfavorable report of her injuries.

to avoid service of a subpoena. After the court made its ruling, defendant moved to allow Dr. Cook to testify solely from Mrs. Barnes' medical records without consideration of her examination. Plaintiffs objected and the court ruled that Dr. Cook could not be called as a witness in any capacity.

The court asked plaintiff's counsel for the names of five physicians from which the court would allow defendant to choose one as a defense expert witness. The court limited the witness testimony to the medical records of plaintiff.[3] Plaintiff's counsel prepared a list of five doctors and then asked the court if she could depose the defendant's choice before trial. The court stated that it would allow the deposition and would grant a short continuance if needed, since the trial date was only five days away. Defendant moved for a continuance to allow time to select his own expert witness, but the court denied that motion.

On the day following the hearing, the court issued a written order confirming its rulings entered orally at the hearing. The same day, defendant filed a Petition for a Writ of Prohibition in this court, seeking relief from the courts order that his medical testimony must be selected from a list of doctors prepared by plaintiffs counsel. On March 27, 1992, this court issued a Preliminary Order in Prohibition, stating that by limiting defen-.dant in his selection of an expert physician, the court may have exceeded its jurisdiction.

In response to the preliminary order, the trial court amended its order of March 26 by withdrawing its offer to allow the defendant to choose one expert from a list of five doctors proposed by the plaintiffs. Again, defendant moved the court to reconsider its ruling on Dr. Cook's exclusion and also moved for a continuance. Both motions were denied.

Trial of the case began on April 1, 1992. At the commencement of trial, defense counsel moved in limine to preclude plaintiffs from commenting on the defendant's lack of medical evidence. The court overruled the motion in limine. This issue was raised again by plaintiff's counsel when she request-

ed an advisory ruling before closing argument concerning what comments she would be allowed to make relative to the defendant's right to have an independent medical examination performed. The court ruled that plaintiff's attorney could argue to the jury that there was an absence of contrary medical evidence by the defendant. Defendant disagreed with the court's ruling and counsel for plaintiffs made the following argument:

> And, ladies and gentlemen, consider that there was absolutely no contrary medical evidence presented to you in this case whatsoever that Mrs. Barnes injuries were not caused by this accident.

On appeal, defendant asserts several points of error, but we consider only those surrounding the court's rulings on the defenses expert witness. Specifically, our inquiry is whether striking Dr. Cook as an expert witness was an abuse of the court's discretion. Plaintiffs initially claim that this issue was not preserved for appellate review since no offer of proof was made by defendant. The procedural issue of the necessity of an offer of proof is considered first.

 The purpose of an offer of proof is to inform the trial court of the legal theory under which the proffered evidence is admissible and the specific nature of its admissibility. *School Dist. of Independence v. U.S. Gypsum Co.,* 750 S.W.2d 442, 453–4 (Mo.App. 1988). Certain formalities and rules must be observed with respect to offers of proof in order to make certain the trial court and opposing counsel understand what evidence is being offered and its relevancy and materiality. *State ex rel. State Highway Com. v. Northeast Building Co.,* 421 S.W.2d 297, 300 (Mo.1967). It follows that the reason for the formality does not exist if the trial court and counsel are sufficiently advised as to what the testimony of the witness will probably be if he is allowed to testify. *Id.*

 The Supreme Court in *Frank v. Environmental Sanitation Management, Inc.,* 687 S.W.2d 876 (Mo. banc 1985) analyzed the

---

**3.** By court order, the medical records of Dr. Lichtor and Dr. Cook were specifically excluded

from review by any expert that defendant might choose.

*Northeast* case which made an exception to the requirement of an offer of proof. The court noted that three things must exist before an offer becomes unnecessary, the first being a complete understanding, based on the record, of the excluded testimony. Second, the objection must be to a category of evidence rather than to specific testimony and the third condition requires that the record must reveal that the evidence would have helped its proponent. *Id.* at 883–4.

There was never any discussion where the court or the plaintiffs attorney expressed any concern about the particulars of the testimony. The court and the plaintiffs attorney understood that the doctor would be testifying as an expert on the nature and extent of the plaintiffs injuries and on the causal connection between those injuries and the accident. In this case, there was a clear understanding of what the testimony would have been.

■ The courts ruling excluding Dr. Cook as an expert witness was not the more traditional situation, i.e., that the specific testimony was not admissible because of relevancy, hearsay, qualifications, etc. The plaintiff's objection went to a "category of evidence," i.e., all of the testimony, as opposed to specific testimony. The court made the grounds for its ruling abundantly clear by its orders of March 17 and March 26; the failure of the witness to comply with the agreement reached by counsel and the witness avoidance of process of service. It is not necessary for our review to speculate about the relevancy or materiality of Cooks testimony because that was not the basis for its exclusion. An offer of proof merely allows the trial court to understand what evidence is being offered and to then rule intelligently upon objections concerning that evidence. *Id.* at 883. In fact, the hearing held on March 25 did not address the relevancy or materiality of Dr. Cooks testimony. Therefore, the particular details of the proposed testimony, that normally would be required by an offer of proof, are of less concern to our review. Our review is conducted with the observation that the record in the trial court revealed that Cooks testimony would be to the "nature and extent of plaintiff Nell

Barnes injuries and causation with respect to the subject of the accident."

Finally, we conclude that the evidence would have been helpful to its proponent. Dr. Cooks medical report was not made a part of the record below, therefore, on plaintiffs motion, we struck it from our record. Notwithstanding the absence of Cooks medical report, the record below, the interrogatory answers setting forth the nature of her testimony, the efforts of defense counsel to have Cooks testimony considered by the jury and plaintiffs counsels unrelenting efforts to exclude her testimony in total are matters properly before us. It would defy common sense to reach any conclusion but that the testimony would be helpful to the defendant.

In this factual situation, an offer of proof would have been an unnecessary effort. The motion to strike and the court's ruling were grounded on matters which would render an offer of proof of no value. *See Stipp v. Tsutomi Karasawa,* 318 S.W.2d 172, 175 (Mo.1958).

■ The next point is whether the trial court erred by striking Dr. Cook. The trial court is vested with the wide discretion in administering the rules of discovery and the exercise of the trial courts discretion will not be disturbed by a reviewing court unless exercised unjustly. *State ex rel. Metropolitan Transportation Services, Inc. v. Meyers,* 800 S.W.2d 474, 476 (Mo.App.1990).

Plaintiffs treating physician, Dr. Prohaska, a board certified internist, testified that she treated Mrs. Barnes for an extended period of time for multiple injuries suffered from the accident. She referred plaintiff for extensive physical therapy. She opined that the sole cause of all injuries for which she treated Mrs. Barnes related to the automobile accident.

These injuries included a herniation of the disk at the L5–S1 level that caused her entire spine to become unstable. She described the disk rupture as a permanent condition and the plaintiffs pain as continuing with decreasing function, including leg pain, numbness, weakness, and possibly complete loss of bladder and bowel control.

Dr. Downs, M.D., an orthopedist, also treated Mrs. Barnes. He also testified at trial to her spinal disk injury and related it to the accident. He expressed his opinion that she would require surgery.

The primary reason, as orally stated by the trial court, for excluding Dr. Cook was an apparent breach of an agreement between counsel for plaintiffs and defendant. The only conditions placed on the attorneys agreement for the statutory medical examination were that defendant submit a written description of the manner, condition, and scope of the examination, the examination was to take place either during the week of March 9 or March 16, 1992, and the substitution of Dr. Cook for Dr. Licthor as an expert witness. At that time, no other conditions were agreed upon by the parties. Certainly, there was no mention, discussion or agreement that plaintiffs husband would be allowed to attend examination. However, Mr. Barnes was allowed to sit in on the history portion of the medical exam. He was then requested to leave the examination room and plaintiffs did not object to this request.[4]

■ At the hearing to strike witness Cook, plaintiffs did not show any misconduct on behalf of Dr. Cook during the examination except the perceived wrong as previously noted. The record is devoid of evidence of any prejudice to the plaintiffs as a result of Mr. Barnes absence from the examining room during the physical. Although the court found no fault with defendants conduct and that the exclusion of Mr. Barnes from the examining room was the result of a misunderstanding, the court declared the examination a nullity as a penalty for the witness actions.[5]

■ Generally, the admission or exclusion of expert testimony is a matter within the sound discretion of the trial court. *Mathews v. Chrysler Realty Corp.*, 627 S.W.2d 314, 318 (Mo.App.1982). An appellate court will not interfere with that discretion unless it appears that such discretion has been abused. *Destin v. Sears, Roebuck and Co.*, 803 S.W.2d 113, 116 (Mo.App.1990). That discretion is abused only where the court's ruling is clearly against the logic of the circumstances or when it is arbitrary and unreasonable. *Mathews*, 627 S.W.2d at 318.

■ The purpose of rules providing for medical examinations in actions involving the physical condition of a party is to eliminate uncertainty concerning the medical aspects of the cause and permit the preparation of an intelligent and informed defense. *State ex rel. McCloud v. Seier*, 567 S.W.2d 127, 128 (Mo. banc 1978). This reveals "the exact and full truth concerning matters in controversy, in order that the court may bestow on litigants equal and exact justice." *Id.* The case went to trial with the plaintiff presenting two expert medical witnesses supporting her claim of injuries while defendant had two experts stricken and was repeatedly denied a continuance to obtain another expert. This plight must be considered in light of the fact that the contest was over the nature and extent of Mrs. Barnes injuries and causation, and specifically, plaintiffs claim that a back injury aggravated on November 8, 1988, was a direct result of the August accident.

In *Tryon v. Casey*, 416 S.W.2d 252 (Mo. App.1967), this court reviewed a trial courts refusal to allow plaintiffs to introduce into evidence portions of the medical records from one of the treating physicians. In re-

---

**4.** Defendant argues that plaintiff waived her right to contest the breach of the agreement since her husband left voluntarily and she did not contest his absence. Defendant cites us to *Plater v. W.C. Mullins Const. Co.*, 223 Mo.App. 650, 17 S.W.2d 658, 669 (1929), which states:

As principal, she had the power to waive this agreement. The voluntary nature of her act in permitting an examination of her body is not affected by the fact she had not therefore agreed to submit to such an examination.

However, our holding is not dependant upon the reasoning found in *Plater*.

**5.** Although there may be instances when good cause exists for having a third person present during the examination, Mrs. Barnes unwarranted skepticism of an unfavorable report falls far short. We need not get to the issue of whether the plaintiff had a recognized right to have another person present during her examination. *But see Jensen v. Wallace*, 671 S.W.2d 331, 334 (Mo.App.1984) (where this court held that an injured plaintiff did not have a constitutional right to have his attorney present during a court-ordered medical examination).

manding the case for a new trial, this court stated:

> The trial courts error in so doing was prejudicial, inasmuch as that action was an arbitrary curtailment of plaintiffs right to introduce testimony on a vital issue-the nature, extent and prognosis of her injuries.

*Id.* at 258.

The prejudice resulting from the trial courts decision falls exclusively upon the defendant. As mentioned above, there was no prejudice shown by the breach of the agreement to the plaintiffs, which in all respects, was breached by a witness and not the attorney for defendant nor the defendant. On the other hand, defendant faced an insurmountable challenge by being forced to proceed at trial on the issue of medical causation and extent of injuries without any medical testimony.

Not only was defendant denied a medical expert, but the trial court allowed counsel for plaintiffs to argue during closing that defendant provided no contrary medical evidence. Counsel for defendant originally raised this issue in a motion in limine [6] and the issue was again discussed at length during the instruction conference. At the instruction conference, counsel for defendant expressed his disagreement with the trial courts ruling allowing counsel for plaintiffs to argue defendants lack of contrary medical evidence.

To allow such an argument is at odds with Missouri law and is contrary to any notion of fairness or justice. *See Calvin v. Jewish Hospital of St. Louis,* 746 S.W.2d 602 (Mo. App.1988). In *Calvin,* the trial court granted the plaintiffs motion to exclude a medical expert because the witness was named so close to trial. In closing argument, the plaintiff made reference to defendants lack of a

medical expert. In remanding the case for a new trial, the court of appeals held:

> When a witness testimony is excluded on an attorneys motion, it is misconduct constituting manifest injustice and thus reversible error if that attorney requests the jury to draw an adverse inference from his opponents failure to produce that witness even though the error is not preserved for appellate review.[7]

*Calvin,* 746 S.W.2d at 605.

The *Calvin* courts reasoning was based upon the fact that plaintiffs attorney knew his motion was the only reason the defendant had not presented expert medical testimony. *Id.* This reasoning is aptly applied to the present case.

The exercise of judicial discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage. *Calvin,* 746 S.W.2d at 605. In the present case, the trial courts rulings represent a divergence from this principle. As a result, we find that the trial courts rulings concerning Dr. Cook were arbitrary and, therefore, an abuse of discretion. *Mathews,* 627 S.W.2d at 318.

Accordingly, the judgment of the court in favor of the plaintiffs is reversed and the cause remanded for a new trial.

All concur.

---

**6.** The trial court denied defendants motion in limine reasoning that defendant did not want a medical expert since he petitioned for a writ against the trial courts proposed list of doctors. The trial court stated:
> The upshot is you made a choice in the case as I've seen it, Mr. Reichel, and you've made your choice, and your choice was not to have a medical doctor. Now, I know I excluded the two that you selected but I think for good

reason. You can discuss that later with the appellate court.

**7.** We do not suggest that this case be reviewed under the doctrine of "plain error," however, we do find counsel's comments during closing "misconduct constituting manifest injustice." *Calvin,* 746 S.W.2d at 605; *Lawton v. Jewish Hospital of St. Louis,* 679 S.W.2d 370, 372 (Mo.App.1984).