

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STACEY MOORE,[1] | ) | No. ED112004 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CC03678 |
| | ) | |
| MONSANTO COMPANY, | ) | Honorable Ellen H. Ribaudo |
| | ) | |
| Respondent. | ) | Filed: September 3, 2024 |

### Introduction

Stacey Moore[1] filed suit against Monsanto Company after being exposed to Monsanto's glyphosate-containing products ("Roundup") for years. After a jury verdict in Monsanto's favor, Moore appealed the circuit court's judgment. Moore claims the circuit court erred in excluding one of his witnesses, overruling his motion for a new trial, and failing to discharge a venireperson for cause. The circuit court's judgment is affirmed.

### Background

In July 2020, Moore filed suit against Monsanto alleging his exposure to Roundup caused him to contract non-Hodgkin's Lymphoma ("NHL"). Moore also alleged Monsanto concealed the risks of Roundup exposure from the public.

---

[1] Moore filed suit with additional co-plaintiffs, but those individuals are not pertinent to this appeal.

Prior to trial, Moore disclosed A.S. as an expert witness who would testify regarding Roundup's general and specific causation of Moore's NHL. Monsanto filed a motion in limine to exclude A.S.'s testimony, asserting A.S. was unqualified to testify regarding causation. Monsanto claimed that while A.S. is a clinical oncologist, he was unqualified to offer an expert opinion on causation because it was an area beyond his expertise. The circuit court sustained Monsanto's motion and excluded A.S.'s expert testimony on general and specific causation.

During voir dire, the circuit court asked the venire whether anyone or their families worked for Monsanto. Two venirepersons responded, but when the question was broadened to include anyone who provided consulting work for Monsanto, seven additional venirepersons responded affirmatively, including venireperson 26 ("Juror"). The circuit court together with Moore and Monsanto's attorneys, inquired with each of these venirepersons individually. Juror disclosed that more than 30 years ago, Juror's law firm assisted Monsanto in securing the proper immigration paperwork for its foreign employees. Juror stated he recalled working with some Monsanto executives, but he could not remember their names and speculated that none of them were still alive. The circuit court independently inquired whether Juror would be able to be fair and impartial. Juror stated he had no knowledge or opinions that would prevent him from being fair and impartial. Juror also stated he would set aside any information he knew about Monsanto and would only base his decision on the evidence presented at trial.

Moore sought to strike Juror for cause due to his prior business relationship with Monsanto. Monsanto noted Juror's work was decades in the past and Juror affirmed he could be impartial. The circuit court overruled Moore's motion to strike Juror for cause because "his decades ago immigration work for individuals who worked at Monsanto does not mean he

worked for Monsanto." After all of the strikes for cause, Moore only used two of his three preemptory strikes and did not remove Juror.

The case proceeded to trial. During Monsanto's opening statement, Monsanto stated Moore would "not bring a medical doctor, a paid expert, or a treating doctor" to testify that Roundup caused Moore's NHL. Moore objected, and the circuit court sustained the objection. Moore immediately asked the circuit court to strike these comments. The circuit court directed the jury to disregard Monsanto's statement that Moore would "not bring a medical doctor."

Monsanto continued and stated, "But the evidence will not include any testimony from any medical doctor stating that Mr. Moore's NHL was caused by Roundup." Moore objected, and the circuit court sustained the objection. Moore then requested the circuit court to give the jury a curative instruction, which it would draft. Monsanto opposed the issuance of a curative instruction. The circuit court again directed the jury to disregard the most recent portion of Monsanto's opening statement. Monsanto finished its opening statement, and Moore called his first witness. At the end of the day, the circuit court admonished the jury to keep an open mind about the trial, to not discuss the trial, and to not perform any research or investigation. The jury was dismissed for the weekend.

Moore then made an additional record regarding Monsanto's opening statement. Moore argued that the circuit court should allow A.S. to testify regarding specific causation to cure the issue. The circuit court stated it believed it utilized the best remedy by instructing the jury to disregard portions of Monsanto's opening statement. The circuit court further noted it instructed the jury that opening statement is not evidence and should not be considered as evidence.

Moore filed a motion for mistrial over the weekend, which the circuit court overruled before resuming trial on Monday morning. Moore renewed his request to call A.S. as an expert

witness, which the circuit court denied. Moore then requested the circuit court issue a limiting instruction explaining his burden of proof regarding causation. The circuit court denied this request.

Trial resumed with Moore presenting several expert witnesses who testified regarding their opinions that glyphosate was associated with causing NHL and Moore's exposure to Roundup increased his risk for developing NHL. Moore testified describing his frequent use of Roundup. Moore filed a written offer of proof, seeking to allow A.S.'s excluded testimony. The circuit court did not modify its pre-trial ruling, and A.S.'s testimony was excluded.

Monsanto called its own expert witnesses, who testified that NHL commonly resulted from factors other than glyphosate. These experts opined there was no causal connection between glyphosate and NHL, and that Moore's exposure to Roundup did not cause his NHL.

Following trial, the jury returned a verdict in Monsanto's favor. The circuit court entered judgment accordingly. Moore filed a motion for new trial, which the court overruled. Moore appeals the judgment, claiming the circuit court erred in: (1) excluding A.S.'s testimony; (2) overruling his motion for a new trial based upon Monsanto's improper opening statement; and (3) not striking Juror for cause.

**Analysis**

*Expert Testimony*

Moore first claims that the circuit court abused its discretion in excluding A.S.'s testimony because he was qualified to provide an expert opinion on causation of Moore's NHL. Moore asserts A.S.'s testimony would have assisted the jury in understanding the evidence and determining whether Roundup caused or contributed to his NHL.

4

Prior to trial, Moore disclosed A.S. as an expert witness on general and specific causation. Monsanto opposed A.S.'s testimony as an expert witness, and the circuit court excluded A.S.'s testimony. The circuit court acknowledged A.S. was qualified to diagnose and treat cancers, but found he was not qualified as an expert to offer general or specific causation opinions in this case. Moore then made an offer of proof, during trial and outside the jury's presence, asking the circuit court to reconsider its pre-trial ruling and submitting A.S.'s deposition in support. The circuit court did not explicitly rule on this offer of proof, but A.S. was excluded from testifying at trial.[2] Moore again raised this issue in his motion for new trial.

"The admission or exclusion of evidence lies within the sound discretion of the [circuit] court and will not be disturbed absent clear abuse of discretion." *Sherrer v. Bos. Sci. Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020) (quoting *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)). When a circuit court excludes evidence, appellate review is focused "not on whether the evidence was admissible but on whether the [circuit] court abused its discretion in excluding the evidence." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 484 (Mo. banc 2021) (quoting *Coyle v. City of St. Louis*, 408 S.W.3d 281, 289 (Mo. App. 2013)). "If reasonable persons can differ as to the propriety of the [circuit] court's action, then it cannot be said that the [circuit] court abused its discretion." *Linton by & through Linton v. Carter*, 634 S.W.3d 623, 627 (Mo. banc 2021) (quoting *In re Care & Treatment of Donaldson*, 214 S.W.3d

---

[2] Monsanto does not argue that Moore's written offer of proof was insufficient. This Court notes, however, that an "offer of proof must be more than 'a mere statement of the conclusions of counsel.'" *Hurley v. Burton*, 626 S.W.3d 810, 822 (Mo. App. 2021) (quoting *State v. Sullivan*, 553 S.W.2d 510, 513 (Mo. App. 1977)). Moore's narrative offer failed to draw attention to specific parts of the deposition supporting his belief A.S. should be allowed to testify as an expert.

331, 334 (Mo. banc 2007)). An erroneous evidentiary ruling warrants reversal when prejudice is demonstrated. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010).

"Expert testimony in civil cases is inadmissible unless it satisfies the evidentiary requirements of section 490.065."[3] *Linton*, 634 S.W.3d at 626. Section 490.065.2(1) states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principles and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case[.]

Although § 490.065.2 permits a witness to testify in the form of an opinion if qualified to do so, the opinion offered by a witness must necessarily be one within the witness's area of expertise. For this reason, this Court has held that medical professionals are not permitted to opine on all things medical simply because they are medical professionals. Rather, medical professionals, like all other experts, must be qualified by knowledge, skill, experience, training, or education to give the opinion offered. *Sigrist By & Through Sigrist v. Clarke*, 935 S.W.2d 350, 357 (Mo. App. 1996) (emphasis in original) (quoting *Cebula v. Benoit,* 652 S.W.2d 304, 308 (Mo. App. 1983)).

Moore's offer of proof, however, demonstrated that A.S. had ventured outside of his area of expertise. A.S. acknowledged in his deposition testimony that he only began to examine the causation of NHL when he was asked to do so by Moore's counsel. He went on to admit that he

---

[3] All statutory references are to RSMo Supp. 2017.

is not an expert in epidemiology, biostatistics, genetics, genotoxicity, or animal bioassays. Yet, to formulate his opinions, A.S. stated he reviewed studies from each of these specialties. Many of the studies that A.S. reviewed were provided to him by Moore's counsel, and throughout his deposition, A.S. was unable to differentiate between studies provided by counsel and studies he found on his own. The deposition also revealed that A.S. was unable to identify which particular studies his opinion was based on or to thoroughly discuss his criticisms of any studies he reviewed. A.S. stated that he did not examine any study to see if there were any other chemicals known to cause NHL. A.S. explained:

> A.S.: So since my only task in this case was to look at glyphosate, I didn't look. I know we talked about the other pesticide that you mentioned starting with a P in the IARC manual. But I didn't go there for this deposition because that wasn't my task.
>
> Monsanto's Counsel: You -- am I correct that you cannot name a single other chemical that is known to cause lymphoma?
>
> A.S.: I could if you give me time to look.
>
> Monsanto's Counsel: Okay. And, [A.S.], what are you looking at on your phone, for the record?
>
> A.S.: I was going to go back to those articles that he sent me, and I think it's there.
>
> Monsanto's Counsel: The articles that counsel sent you?
>
> A.S.: The stuff that's on, I think, either 2 or 3 or both, yes.
>
> Monsanto's Counsel: Okay. So you are looking for articles that counsel sent you for your reliance list –
>
> A.S.: Yes.
>
> . . .
>
> Monsanto's Counsel: As an oncologist, have you encountered other chemical as risk factors for [NHL], or no?
>
> A.S.: I think there are. I just would have to look it up….

7

. . .

> Monsanto's Counsel: And, [A.S.], would you conclude from animal studies whether a particular substance can cause cancer in humans?
>
> A.S.: [A.S.], the community clinical oncologist, is not the one you're going to ask to answer those questions.

Although it is true that "[m]edical doctors do not need to be epidemiologists in order to testify regarding epidemiological studies," they must still be qualified by training or experience to do so and their opinion must still be helpful to the jury. *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1148 (N.D. Cal. 2018) (quoting *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 426 (S.D.N.Y. 2016)). A.S.'s deposition testimony does not include any indication that he was qualified to discuss or critically analyze the studies on which he relied. And nothing in A.S.'s deposition testimony demonstrated that he attempted to critically analyze any of the studies he read or could meaningfully discuss studies that were contrary to his position. Rather, A.S. did little more than summarize studies that were helpful to Moore's position, the vast majority of which were provided to A.S. by Moore's counsel.

A.S. did not testify to any background or experience with respect to conducting or analyzing the types of epidemiological studies on which he intended to rely. Significantly, he indicated that he was not familiar with certain criteria commonly used in epidemiology to differentiate correlation and causation. In short, though A.S. may be an expert in the treatment of NHL, his deposition testimony leaves this Court with significant doubts regarding his status as an expert in the analysis of the causation of NHL.

A.S. also offered testimony regarding the specific causation of Moore's NHL. Specifically, Moore performed a "differential diagnosis" to conclude that glyphosate caused

Moore's NHL.[4] "In performing a differential diagnosis, a[n expert] begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury. The [expert] then 'rules out' the least plausible causes of injury until the most likely cause remains." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 709 (Mo. App. 2020) (quoting *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). A.S.'s differential diagnosis is unreliable, however, because he relied on his own conclusion that glyphosate is a cause of NHL. As discussed, A.S. was not qualified to give this opinion. A.S. also expressly disclaimed his reliance on any other expert witness for this proposition. As a result, the circuit court did not err in determining the differential diagnosis offered by A.S. was unreliable.

A.S.'s admitted lack of expertise in identifying causes of NHL, his unfamiliarity with the studies he would rely upon, and his admitted deference to other experts' conclusions demonstrates he cannot be qualified as an expert pursuant to § 490.065.2(1). The circuit court did not abuse its discretion in excluding A.S. as an expert witness.

*Opening Statement*

Next, Moore claims that the circuit court erred in overruling his motion for new trial because Monsanto's comment during opening statement that Moore would not present a medical doctor to testify about causation warranted a mistrial. Specifically, Moore argues that because Monsanto successfully sought to exclude A.S., Monsanto was prohibited from commenting on his absence during trial. According to Moore, the circuit court's failure to grant a mistrial on this basis constitutes an abuse of discretion and a manifest injustice.

---

[4] The analysis A.S. offered really was not a "differential diagnosis"—identification of Moore's disease, but rather a "differential etiology"—identification of the cause of Moore's disease. *See In re Roundup Prod. Liab. Litig.*, No. 16-MD-02741-VC, 2023 WL 7928751, at *6 n.6 (N.D. Cal. Nov. 15, 2023).

9

"A mistrial is a drastic remedy that should be granted only in exceptional circumstances."
*Payne v. Fiesta Corp.*, 543 S.W.3d 109, 123 (Mo. App. 2018) (quoting *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 24 (Mo. App. 2013)). The circuit court has discretion to determine whether to grant or deny a mistrial. *Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 780 (Mo. banc 2018). This Court reviews the circuit court's denial of a motion for new trial for an abuse of discretion. *Bair v. Faust*, 408 S.W.3d 98, 102 (Mo. banc 2013). "An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable that the ruling indicates a lack of careful deliberate consideration and shocks the sense of justice." *Id*. This Court will reverse the circuit "court's denial of a motion for new trial only if we find a 'substantial or glaring injustice.'" *Beverly v. Hudak*, 545 S.W.3d 864, 869 (Mo. App. 2018) (quoting *Sterbenz v. Kan. City Power & Light Co.*, 333 S.W.3d 1, 7 (Mo. App. 2010)).

In support of his argument, Moore relies on *Calvin v. Jewish Hospital of St. Louis, Inc.*, 746 S.W.2d 602 (Mo. App. 1988). In *Calvin*, the circuit court allowed the plaintiff and another party to disclose expert witnesses after a court-imposed deadline, but the court prohibited the hospital defendant from doing the same. *Id.* at 603-04. The court gave no reason for treating the parties differently. *Id.* During closing argument, the plaintiff's attorney argued that, because the hospital failed to have an expert testify, the jury should infer that the hospital could find no expert witness to support its case. *Id.* at 605. The circuit court then compounded this error by overruling the hospital defendant's objection to the argument. *Id.* On appeal, this Court held that, when a witness's testimony is excluded on the motion of a party, it is error for the circuit court to allow the moving party to also argue that the jury can draw an adverse inference from the absence of that witness. *Id.*

10

But *Calvin* "did not hold, and cannot be read for the proposition that, a new trial must be awarded as a matter of law every time an attorney wrongfully comments on the absence of an adverse witness after first securing a ruling excluding that witness's testimony." *Maloney v. Benchmark Ins. Co.*, 628 S.W.3d 667, 684 (Mo. App. 2021). And this Court "cannot find any endorsement in *Calvin* of the principle that a limiting instruction is insufficient to remedy an improper adverse inference as a matter of law or any statement from which this principle would follow." *Campise v. Borcherding*, 224 S.W.3d 91, 95 (Mo. App. 2007).

Moreover, unlike in *Calvin* the circuit court, here, instructed the jury to disregard the allegedly erroneous statements. Even assuming that counsel's opening statement was improper, the circuit court sustained Moore's objection to the testimony and instructed the jury to disregard the statement. When Moore presented his motion for a mistrial, the circuit court explained that instructing the jury to disregard Monsanto's comments was a sufficient remedy because opening statements are not evidence and over the course of the trial, the jury would hear from so many doctors they would not remember Monsanto's opening statement. "[A]n instruction to the jury to disregard inadmissible evidence or improper argument is a sufficient remedy, as we must presume the jury has followed the court's instructions." *Matter of Stiles*, 662 S.W.3d 322, 332 (Mo. App. 2023) (quoting *State v. McClendon*, 477 S.W.3d 206, 215 (Mo. App. 2015)).

This Court agrees with the circuit court. As a result, the circuit court did not abuse its discretion in overruling Moore's motion for a new trial.

*Qualified Juror*

Finally, Moore claims the circuit court erred in overruling his motion to strike Juror for cause during voir dire. Moore asserts that because Juror and his law firm assisted Monsanto with

11

immigration services, Juror was unconsciously or subconsciously biased in Monsanto's favor. Moore argues that this relationship resulted in Juror being unqualified for service.

Determining whether a venireperson is qualified to serve on a jury is within the circuit court's discretion. *Thomas by & through Thomas v. Mercy Hosps. E. Cmtys.*, 525 S.W.3d 114, 117 (Mo. banc 2017). This Court defers to the circuit court's ruling on a challenge for cause "unless it is clearly against the evidence and is a clear abuse of discretion." *Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo. banc 2008) (quoting *State v. Christeson*, 50 S.W.3d 251, 264 (Mo. banc 2001)).

"The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *Matter of D.N.*, 598 S.W.3d 108, 116 (Mo. banc 2020) (quoting *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998)). In determining whether an individual venireperson is qualified to serve, the analysis must focus on whether that individual's beliefs would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Joy*, 254 S.W.3d at 888 (quoting *Christeson*, 50 S.W.3d at 264). A venireperson's qualifications are determined by the entire examination. *Matter of Care & Treatment of Braddy*, 559 S.W.3d 905, 917 (Mo. banc 2018).

Moore moved to strike Juror because Monsanto hired him for legal services to secure the proper immigration paperwork for its foreign employees. Juror stated that his law firm had not consulted with Monsanto for more than 30 years. Juror could not remember the name of any Monsanto executives he worked with. Further, the record of Juror's examination shows that Juror demonstrated he would be fair and impartial and would follow the circuit court's instructions. This Court finds Moore's attempts to liken Juror to a current or recent employee of a party unpersuasive.

The circuit court's decision to overrule Moore's motion to strike Juror for cause was not so clearly against the logic of the circumstances that it constituted an abuse of discretion. There was no error.

**Conclusion**

The circuit court's judgment is affirmed.

_____
John P. Torbitzky, P.J.

Robert M. Clayton III, J., and
Michael S. Wright, J. concur.