In the
 Missouri Court of Appeals
 Western District
 JAMES MALONEY AND HADLEY )
 MALONEY, )
 ) WD83411
 Appellants, )
 ) OPINION FILED: April 27, 2021
 v. )
 )
 BENCHMARK INSURANCE )
 COMPANY, )
 )
 Respondent. )

 Appeal from the Circuit Court of Cass County, Missouri
 The Honorable William B. Collins, Judge

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Lisa White Hardwick,
 Judge and Anthony Rex Gabbert, Judge

 James Maloney ("Maloney") and his wife, Hadley Maloney (collectively

"Plaintiffs"),1 appeal from a judgment entered in favor of Benchmark Insurance Company

("Benchmark") following a jury trial on Plaintiffs' claim of bad faith failure to settle within

insurance policy limits. Plaintiffs allege that the trial court committed legal error in

 1
 Because James Maloney and Hadley Maloney share the same surname, we refer to Hadley by her first
name for purposes of clarity. No familiarity or disrespect is intended.
denying their motion for new trial because Benchmark's counsel engaged in intentional

misconduct by repeatedly violating the trial court's pretrial rulings on motions in limine,

and because Benchmark's counsel suggested an improper adverse inference about a

witness's absence during closing argument. Because the trial court did not abuse its

discretion in denying the motion for new trial, we affirm.

 Factual and Procedural Background2

 On April 4, 2015, Karla Coronado ("Coronado") negligently drove her vehicle and

caused an accident with a vehicle driven by Maloney. Maloney was injured. At the time

of the wreck, Benchmark insured Coronado and her husband. Benchmark possessed the

power to settle any claims against Coronado. Andres Perez ("Perez") was assigned to

handle Maloney's bodily injury claim against Coronado, and as Benchmark's agent, was

responsible for any investigation necessary to assess liability, coverage, and damages.

Perez determined that Coronado was 100 percent at fault for the accident.

 On April 8, 2015, Perez spoke with Maloney by phone and was told that Maloney

went to the emergency room after the accident suffering from neck and shoulder injuries,

and cuts on his hands that required stitches. Maloney reported that he had a CT scan of his

neck and additional X-rays. Perez claimed that Maloney said he would send Perez all of

his medical records, though Perez did not recall sending Maloney a medical authorization

form.

 2
 "On appeal, in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light
most favorable to the jury's verdict, disregarding evidence to the contrary." Rosales v. Benjamin Equestrian Ctr.,
LLC, 597 S.W.3d 669, 672 n.2 (Mo. App. W.D. 2019) (internal quotation marks omitted).

 2
 On June 16, 2015, Maloney advised Perez by phone that he would need bilateral

rotator cuff surgery and that his emergency room bill alone was $12,000. Based on this

information, Perez increased the reserves3 on Maloney's claim from $4,200 to $25,000,

Coronado's policy limits. Perez asked Maloney for his medical bills and records. Perez's

supervisor advised that Perez needed to verify Maloney's need for surgery.

 Perez sent letters to Maloney on September 3, 2015, and on November 17, 2015,

following up on his request for medical records and bills. The November 17, 2015 letter

provided that if Benchmark did not receive Maloney's medical records and bills within ten

days, his claim would be closed. Maloney acknowledged that he received both of these

letters from Benchmark, and that he did not respond. On November 29, 2015, Perez closed

Maloney's claim due to the lack of response from Maloney.

 On January 8, 2016, Maloney sent a demand letter to Perez seeking to settle his

claim for $25,000, Coronado's policy limits, and advised that the demand would expire in

fifteen days. The letter was prepared by Maloney's attorney, though Maloney signed and

sent the letter. The letter stated, "Enclosed is a medical record from the hospital and a

medical record from my doctor's office showing that I had two torn rotator cuffs from this

collision. I need surgery." The letter included nine pages of medical records consisting of

seven pages of an emergency room record and a progress summary note written by a nurse

practitioner from an orthopedic surgeon's office. The nurse practitioner's note summarized

her physical exam of Maloney, and the emergency room records, which included x-rays

 3
 Perez's supervisor defined reserves as "the value that you place on a claim for the anticipated exposure," or
"what you expect to pay on the claim."

 3
and MRIs. The summary stated that Maloney required surgery to repair both rotator cuffs,

and that including rehabilitation, the process would require him to take six to nine months

off of work in his job as a custodian. The nurse practitioner's note indicated it was

"pending" as it had not been signed by the treating orthopedic surgeon.

 The documents included with Maloney's demand letter did not include the MRI

reports or any of Maloney's medical bills. At the time the demand letter was sent,

Maloney's attorney had medical bills in his possession that exceeded $25,000 in amount.

 On January 14, 2016, Perez rejected Maloney's demand. Perez confirmed receipt

of Maloney's demand letter, but advised that he was still in need of Maloney's medical bills.

Perez noted in the claim file, "Requesting policy limits, not represented" and "sent medical

records indicating he needs surgery for his two torn rotator cuffs" and "no bills received,

and yet he is demanding policy limits." Maloney received this correspondence from

Benchmark, but did not send Perez any of his medical bills.

 On February 26, 2016, Perez sent another letter requesting all of Maloney's medical

bills and any additional medical records, and stated that once Benchmark received the

documents, it would evaluate Maloney's bodily injury claim. Maloney received this letter

but did not respond. On June 30, 2016, Perez sent Maloney another letter asking for his

medical bills related to the accident.4

 On June 20, 2016, Plaintiffs, represented by the same attorney who assisted

Maloney in preparing the January 8, 2016 demand letter, filed suit against Coronado in the

 4
 At this time, Perez was not aware that Plaintiffs had filed suit against Coronado ten days prior on June 20,
2016.

 4
Circuit Court of Cass County ("Underlying Lawsuit"). In August 2016, Benchmark hired

Michael Kirkham ("Kirkham") to defend Coronado's interests in the Underlying Lawsuit.

On December 28, 2017, following a bench trial, a judgment was entered against Coronado

in the Underlying Lawsuit. The judgment assessed Maloney's damages at $430,000 and

Hadley's damages at $10,000, and awarded post-judgment interest at 6.5 percent. On

January 4, 2018, Benchmark issued a payment to Plaintiffs in the amount of $25,000,

Coronado's insurance policy limits, in partial satisfaction of Plaintiffs' judgment against

Coronado.

The Present Suit--Pretrial Rulings

 On January 29, 2018, Plaintiffs, represented by new counsel, filed an equitable

garnishment action against Benchmark and Coronado, pursuant to section 379.200,5

seeking recovery from Coronado's insurance policy of unpaid post-judgment interest on

the judgment in the Underlying Lawsuit and costs. On November 1, 2018, Coronado

entered into an agreement with Plaintiffs which assigned Coronado's claims against

Benchmark for bad faith failure to settle within policy limits in exchange for Plaintiffs'

agreement not to seek recovery of the judgment in the Underlying Lawsuit from Coronado.

On January 8, 2019, Plaintiffs filed an amended petition asserting an additional claim

against Benchmark for bad faith failure to settle within policy limits, based on the

assignment of that claim from Coronado.

 5
 All statutory references are to RSMo 2016, as supplemented unless otherwise indicated.

 5
 Six weeks before the scheduled October 22, 2019 trial date, Benchmark informed

Plaintiffs that it did not intend to call Coronado as a witness at trial. Plaintiffs advised

Benchmark that as a result, Plaintiffs would not take Coronado's deposition, and did not

intend to call Coronado as a witness at trial. Kirkham, the attorney retained by Benchmark

to represent Coronado in the Underlying Lawsuit, was designated by Benchmark as a non-

retained expert. Benchmark deposed Kirkham to preserve his testimony for trial.

 The parties filed several pretrial motions, including motions in limine, which were

heard and ruled on by the trial court6 just prior to trial. Relevant to this appeal, Benchmark

urged the exclusion of any evidence suggesting that Coronado suffered emotional distress

by virtue of Benchmark's failure to settle Maloney's claim within policy limits because

damages for emotional distress are not assignable and could not be recovered by Plaintiffs.

The trial court sustained this motion in limine. Benchmark also moved for a bifurcated

trial pursuant to section 510.263 with respect to Plaintiffs' claim for punitive damages. The

trial court sustained this motion.

 The trial court also sustained several motions in limine filed by the Plaintiffs, and

thus excluded from trial: (1) evidence or argument referring to the lack of other bad faith

claims against Benchmark; (2) evidence that Plaintiffs and their earlier attorney employed

an intentional strategy to "set up" Benchmark in order to generate a bad faith failure to

settle claim; and (3) evidence of settlement negotiations that "result[ed] in the assignment

 6
 The trial judge in this case was the same trial judge who heard, and entered judgment in, the Underlying
Lawsuit.

 6
and agreement to limit recovery" following the judgment entered in the Underlying

Lawsuit.

 Plaintiffs' motions in limine also sought to exclude Kirkham's testimony regarding

his "employment, defense and evaluation of the underlying claim after [] Benchmark

rejected" Maloney's January 8, 2016 written demand for Coronado's policy limits because

Benchmark did not hire Kirkham until eight months after Benchmark rejected the demand.

The trial court partially sustained this motion by excluding Kirkham's testimony to the

extent it addressed his involvement after he was retained to represent Coronado. Kirkham's

permitted testimony was thus limited to addressing how he would have handled Maloney's

claim had he possessed only the information available to Benchmark in January 2016, and

even then, remained subject to laying a proper foundation.

 Finally, Plaintiffs' motions in limine sought to exclude the terms of Coronado's

assignment of her bad faith failure to settle claim to Plaintiffs, including reference to the

fact that the agreement prohibited recovery of the judgment in the Underlying Lawsuit

from Coronado. Plaintiffs argued that Benchmark should not be permitted to argue that

Coronado sustained no damage as a result of the assignment. The trial court withheld a

ruling on this motion in limine, as reflected by the following exchange:

 [Benchmark's counsel]: Your Honor, this is an issue that I don't think the
 Court can rule on until we [find] out what arguments Plaintiff is going to
 make at trial that [Coronado] was damaged as far as any emotional distress .
 ..

 [Plaintiffs' counsel]: None. No. I have agreed to your motion on that. I'm not
 -- we're not presenting any evidence of damage to [Coronado] at all. The
 damage is the judgment against her that's unpaid.

 7
[Benchmark's counsel]: . . . If [Coronado] shows up at trial, under this
assignment, she is obligated by contract to cooperate and help the Plaintiffs.
If she shows up at trial, I'm entitled to bring that up with her to show that she
is not here, again, out of the goodness of her heart. She's here based on a
contract that says she's supposed to cooperate. . . . So if -- [Plaintiffs' counsel
is] representing he's not going to gild the lily, for lack of a better term, but if
he changes his mind and he's going to gild the lily and say that she suffered
all these -- these intangible damages, then I'm entitled to show this
assignment protecting her from those types of things.

....

[Plaintiffs' counsel]: I don't even understand that because here's the
confirming email that I sent to [Benchmark's counsel] in September when we
agreed that neither one of us were going to call [Coronado] in this case. I
specifically forwent the opportunity to depose her based on his representation
that he wasn’t going to call her, and I agreed not to call her except in the
event that he did something in this case that required me to follow up with
that. And now I find out, five months before that he had taken a sworn
statement under oath from her, so he knew all the time what she was going
to say. So I don't have any intention of calling her. He's not going to call
her. I don't see how that's an issue.

[Trial court]: Sounds like it's not an issue unless somebody changes their
mind in the next, oh, [twenty-four] hours.

[Benchmark's counsel]: Your Honor, I think if somebody opens the door,
then the assignment gets to walk through, but that hasn't happened yet.

[Trial court]: Okay. And let me just hold off on that one because I'm going
to prevent you from opening that door, both sides.

[Plaintiffs' counsel]: I don't want to open that door. I want to keep it out. . . .
I have agreed to his motion in limine that I don't intend to present any
evidence of other damage to [Coronado].

....

[Trial court]: . . . I'm going to reserve it, but anytime we're going to talk about
[Coronado] or anybody starts thinking that they're going to call [Coronado],
then everybody needs to -- whoever is thinking that better advise me and they
better tell me why they've changed their mind in the middle of my trial, so.
All right. So we'll figure that one out next.

 8
Plaintiffs' Objections during Trial

 Trial commenced on October 22, 2019. During Benchmark's opening statement,

Benchmark's cross-examination of Plaintiffs' expert witness, Benchmark's direct

examination of its own expert witness, and Benchmark's closing argument, Plaintiffs

successfully objected on several occasions based on claimed violations of the trial court's

pretrial rulings.

 During Benchmark's opening statement, counsel stated:

 So, [the suit is] filed . . . and the suit is assigned . . . to [Kirkham] . . . and he
 gets the whole claim file. They sent him what they had as far as notes and
 their records. They send him the demand letter that [Maloney] sent in with
 all nine pages of records, and he goes through the whole file and what he
 does is a case evaluation for [Benchmark]. And what does he conclude? He
 concludes this is not --

Plaintiffs' counsel objected that Benchmark was about to comment on testimony that would

not be admissible given the trial court's in limine ruling precluding Kirkham from

expressing an opinion based on information other than that in Benchmark's possession at

the time of Maloney's January 8, 2016 demand letter. The trial court sustained Plaintiffs'

objection.7

 Later, Benchmark's counsel stated during opening that "eventually, the $25,000 is

offered in a settlement and it's rejected." Plaintiffs' counsel objected:

 [Plaintiffs' counsel]: This is exactly what was excluded on the settlement
 negotiations leading up to the --

 [Benchmarks' Counsel]: That wasn't the settlement negotiations.
 7
 Ultimately, none of Kirkham's deposition testimony was entered into evidence at trial, as Benchmark told
the trial court mid-trial, "I can't find testimony that will fit within the boundaries of your motion in limine. . . . So I'm
just not going to play it. . ."

 9
 [Trial court]: It has the word settlement. Please, please end this so that I can
 get -- we can get [onto] evidence because I can't have you talking about
 settlement negotiations. That's exactly what we -- everybody knows that.
 That's basic law.

 [Benchmark's counsel]: That -- I thought the settlement negotiations had to
 do with the settlement negotiations assignment. That's what I -- that's what
 I thought it was.

 [Plaintiffs' counsel]: I'm going to ask the Court to instruct the jury to
 disregard that.

 [Trial court]: Yes, I will do that.

The trial court instructed the jury to "disregard the last comment with regards to any of the

-- any settlement negotiations that occurred."

 Benchmark's opening statement continued:

 Coronado is still technically a party to this case and Benchmark is still paying
 for a defense lawyer for her, but this is not her fight anymore. I think we've
 gone over this, but the -- her claims have been assigned to [Maloney].
 There's no outcome of this trial that could result in [Coronado] having to pay
 the judgment.

Plaintiffs' counsel objected and the parties approached the bench, again:

 [Plaintiffs' counsel]: This is exactly the whole thing as to the insurance
 exchange . . .

 [Trial court]: Why are we talking about assignments and stuff like that?

 [Benchmark's counsel]: He opened the door.8

 8
 In Plaintiffs' counsel's opening statements, he stated that Benchmark knew the judgment in the Underlying
Lawsuit was a "financial catastrophe" for Coronado. Benchmark did not object to this statement at the time it was
made, and did not contemporaneously take the position that by making the statement, Plaintiffs opened the door to
discussing Coronado's assignment of claims. By sustaining Plaintiffs' objection to Benchmark's reference to the
assignment during opening, and instructing the jury to disregard the reference, the trial court necessarily rejected
Benchmark's contention that Plaintiffs had opened the door to discussing the assignment.

 10
 [Trial court]: I mean, we -- okay. Nothing about negotiations. There's an
 assignment and we've all talked about that. We're talking about a settlement.
 What is going on here? We can't be doing that. It's just going to confuse the
 jury, so.

On Plaintiffs' counsel's request, the trial court instructed the jury to "disregard the last

statement. That has nothing to do with anything in this case."

 Toward the end of Benchmark's opening statement, Plaintiffs' counsel objected four

times on the basis that counsel's statements were arguments. The trial court sustained each

objection. Plaintiffs did not contend at trial that the subject matter being discussed at the

time of these objections violated the trial court's pretrial rulings.

 During cross-examination of Plaintiffs' expert witness, Benchmark's counsel asked,

"are you aware of any other bad faith lawsuits against Benchmark?" Plaintiffs' counsel

objected and the following discussion occurred at the bench:

 [Plaintiffs' counsel]: This is another intentional violation of the motion in
 limine ruling.

 [Benchmark's counsel]: I think the door was opened when [the expert] said
 "institutional conduct."

 ....

 [Plaintiffs' counsel]: Your Honor, even if that's true, the order requires him
 to come to the bench and explain to the Court why he thinks he can before
 he does it intentionally for the fourth time in front of the jury. It started with
 opening statement. There were two limine instructions because he's been
 doing it all week. This is inexcusable.

 ....

 [Trial court]: You know better. And I'm -- you have now created me a
 situation where I've attempted to limit myself, and now you've -- you've done
 this and this is pretty blatant. So I think -- I don't want to declare a mistrial
 unless it's requested, but I'm -- we're going to start doing it the way I've

 11
 ordered it. And then you can appeal me all you want. . . . And if you don't
 want to follow my rules, if you don't want to do that, then we need to -- then
 you need to get somebody else that's going to follow my instructions[,] okay?

 ....

 [Trial court]: So please stop. If we're going to do this -- you know, you
 wanna [sic] blow this thing up, I guess that's what you're choosing to do. But
 we're not gonna [sic] do this in my courtroom.

(Emphasis added.) Upon Plaintiffs' counsel's request, the trial court instructed the jury to

ignore the question that had been asked of Plaintiffs' expert witness. Plaintiffs did not

request a mistrial.

 During Benchmark's direct examination of its expert witness, attorney Steven Plitt

("Plitt"), Plaintiffs lodged three objections based on or arguably related to the assertion that

Plitt's testimony violated the trial court's in limine ruling excluding evidence that Plaintiffs

allegedly had the intent to "set up" a bad faith claim against Benchmark. All three

objections were sustained, and Plaintiffs requested no other relief from the trial court.

 First, when Plitt was asked whether Perez could have tried harder to gather

information from Maloney, Plitt testified, "[y]ou can certainly now try to send out that

legalese release or medical authorization. I think from when I looked at the record and the

testimony of [Maloney], it would've made no difference." The trial court sustained

Plaintiffs' objection that this testimony exceeded the scope of proper expert witness

testimony. The trial court stated that the witness needed to confine his testimony to expert

opinion regarding industry standards for the handling of claims. Plaintiffs advised the trial

court that if the witness's inability to refrain from providing improper opinion testimony

continued, Plaintiffs would be asking for an admonition of the witness from the trial court.

 12
 Second, Benchmark's counsel asked Plitt, "Well, if you get a letter from a lawyer,

based on your experience and the patterns you see, what is usually written in the letter and

included with the letter?" Plaintiffs objected that the question violated the trial court's in

limine ruling excluding state of mind evidence that suggested Plaintiffs had the intent to

set Benchmark up for a bad faith claim. The trial court did not expressly sustain the

objection, but effectively did so by stating that Benchmark's counsel's questions and Plitt's

responses needed to "get to the point of industry standards with regard[] to demand letters"

from an unrepresented claimant.

 Third, Benchmark's counsel asked Plitt whether there was anything unusual

included in Maloney's January 8, 2016 demand letter, to which Plitt responded:

 Well, the fact that he's providing records, first of all, is unusual because
 usually the first time around, it isn't -- there aren't records. And then it’s the
 records he provided and what he provided versus what he probably had.

Plaintiffs objected on the basis that "here we go into the same thing." The objection

prompted a lengthy discussion about how Plitt's improper opinion testimony about what

Plaintiffs were thinking at the time of Maloney's demand letter violated the trial court's

pretrial ruling. The trial court warned, "[Plitt] is an attorney[,] right? . . . And you're

approaching me, what, how many times have we been up here? . . . About four or five, yes,

at least. So [Plitt] knows that something's going wrong and I don't want -- I do not want

this jury to have you have to come up here and then -- so let's ask him about the industry

standards. . ."9

 9
 Benchmark requested a break twice, in order to counsel the witness, but the trial court refused, explaining
that he wanted the testimony to conclude.

 13
 During closing argument, Benchmark argued, "the damages you're supposed to

assess are what [Coronado] suffered, and we've never heard from her. Did she shed a tear?

Did this really affect her life?" Plaintiffs' counsel requested to approach the bench and

objected on the grounds that this statement disregarded the trial court's ruling on

Benchmark's motion in limine seeking to exclude evidence of Coronado's emotional

damages. The parties had the following discussion at the bench:

 [Plaintiffs' counsel]: [Benchmark] filed a motion in limine saying that I
 couldn't present any evidence of her damages, and now he gets up and argues
 that we didn't hear any damages from her.

 [Benchmark's counsel]: The instruction says compensatory damages that
 she's to be awarded.10

 [Plaintiffs' counsel]: But he . . . filed the motion. I agreed I wasn't going to
 do it, and now he's arguing the lack of it. That is just --

 [Benchmark's counsel]: The instruction says compensatory damages. They
 are not limited to awarding damages of just what he suggested.

 [Plaintiffs' counsel]: We've had at least five conferences where I've said I'm
 not asking for anything except the money. That's exactly what I did. I agreed
 --

 [Trial court]: Didn't we talk about this yesterday?

 [Plaintiffs' counsel]: Absolutely we did. And the instructions --

 [Benchmark's counsel]: The instruction -- they can award anything they want
 in that instruction.

 [Plaintiffs' counsel]: But you sandbagged me into not presenting the
 evidence, and now you're arguing that against me.

 10
 Jury Instruction Number Seven, the instruction addressing damages, read: "If you find in favor of
Plaintiffs, then you must award Plaintiffs such sum as you believe will fairly and justly compensate [P]laintiffs for
any damages you believe [Coronado] sustained as a direct result of the occurrence mentioned in the evidence."

 14
 [Benchmark's counsel]: That -- that was never apart of your case. She was
 never the plaintiff.

 ....

 [Plaintiffs' counsel]: I want an instruction to disregard.

The trial court instructed the jury, "we're going to disregard any other -- the compensatory

damages are what the compensatory damages are. That is all that we're dealing with. I

have limited that previously."

 Benchmark's counsel then argued the following on the subject of damages:

 But if you decide Benchmark did commit bad faith, I suggest that rewarding
 [sic] the unpaid judgment plus the amount of interest that [Plaintiffs' counsel]
 has talked about and has put into . . . evidence is the proper punishment. That
 is the proper message if you think they really did commit bad faith. That
 would be between $450 and $500,000 which is almost [twenty] times the
 value of the policy. That sounds like a pretty strong message to the company
 if you feel strongly that they committed bad faith. That sounds like the
 appropriate punishment to me. The proper punishment is not making a
 millionaire for behavior --

Plaintiffs objected and argued at the bench that Benchmark's motion to bifurcate the

punitive damage phase of the trial had been sustained, and that Benchmark's counsel's

apparent intent to begin making a case against awarding anything more to punish

Benchmark than the amount of the judgment in the Underlying Lawsuit was improper. The

trial court sustained Plaintiffs' objection and sua sponte instructed the jury to "disregard

the last statement made by counsel."

 Once the case was submitted to the jury, the jury deliberated for one hour, and

returned its verdict in favor of Benchmark on Plaintiffs' claim of bad faith failure to settle

 15
within policy limits.11 The trial court entered a judgment in favor of Benchmark on that

claim on November 12, 2019.

 Plaintiffs timely filed a motion for new trial on November 15, 2019, which alleged,

relevant to this appeal, that Benchmark's counsel's repeated violations of the trial court's

pretrial orders and rulings were intentional and deprived the Plaintiffs of a fair trial. After

hearing arguments, the trial court denied Plaintiffs' motion for new trial. The trial court

reasoned that the jury's verdict was supported by substantial and competent evidence, and

that:

 Plaintiffs have not made a showing any misconduct by Benchmark during
 trial prejudiced the outcome of the verdict or that the jury failed to follow the
 curative and limiting instructions of the Court in arriving at their verdict. Of
 note, the jury deliberated for only one hour before returning a verdict for
 [Benchmark]. Further, a new trial should not be granted because Plaintiffs
 waived any claimed right to a new trial based on misconduct by Benchmark
 by foregoing a mistrial and proceeding to verdict with the jury.

 Plaintiffs appeal.

 Analysis12

 Plaintiffs raise two points on appeal, both of which claim that the trial court erred

in denying their motion for new trial. Plaintiffs' first point argues that Benchmark's counsel

repeatedly and willfully attempted to present matters to the jury which the trial court

excluded in pretrial rulings and that these violations substantially influenced the jury's

 11
 At the close of Plaintiffs' evidence, the trial court directed a verdict for Plaintiffs on their claim of
equitable garnishment and awarded Plaintiffs' claim against Coronado's insurance policy for post-judgment interest
and court costs associated with the judgment entered in the Underlying Lawsuit.
 12
 Pending before this court are several motions filed by the parties to strike portions of one another's briefs,
to dismiss Plaintiffs' appeal, and to strike the supplemental legal file filed by Benchmark. All of these motions are
denied.

 16
verdict by forcing the Plaintiffs to continually object, making it appear that they were

suppressing evidence. Plaintiffs' second point on appeal contends that Benchmark's

counsel improperly argued an adverse inference from Coronado's failure to testify at trial

in violation of the pretrial ruling on Benchmark's in limine motion, and despite the fact that

Coronado was equally available to Benchmark, resulting in a manifest injustice.

 "The trial court has discretion to decide whether an attorney's conduct necessitates

a new trial because it was prejudicial and substantially influenced the verdict." Liszewski

v. Union Elec. Co., 941 S.W.2d 748, 753 (Mo. App. E.D. 1997) (citing Ryan v. Campbell

"66" Exp., Inc., 304 S.W.2d 825, 827 (Mo. banc 1957)). "A trial court's ruling on a motion

for new trial due to attorney misconduct will be reversed only upon finding an abuse of

discretion." Id. at 754 (citing Ryan, 304 S.W.2d at 827). A trial court's denial of a motion

for new trial based upon counsel's alleged improper adverse inference during closing

arguments is also reviewed for abuse of discretion. Campise v. Borcherding, 224 S.W.3d

91, 94 (Mo. App. E.D. 2007).

 "A trial court abuses its discretion if its ruling is clearly against the logic of the

circumstances then before it and is so arbitrary and unreasonable as to shock the sense of

justice and indicate a lack of careful consideration." Burns v. Granger, 613 S.W.3d 800,

803 (Mo. App. W.D. 2020). We will only find reversible error "where an abuse of

discretion is found and the [appellant] can demonstrate prejudice." Id. (internal quotation

marks omitted).

 17
Point One

 Plaintiffs' first point on appeal argues that the trial court erred in denying their

motion for new trial because Benchmark's counsel's willful and repeated violations of the

trial court's pretrial rulings and orders required repeated objections which substantially

influenced the jury's verdict. Specifically, Plaintiffs point on appeal complains about the

following:

 (1) Benchmark's attempt during opening statement to say that Kirkham
 would provide an opinion about Maloney's claim based on the information
 beyond that available when Benchmark denied Maloney's January 8, 2016
 demand;

 (2) Benchmark's reference during opening statement to a rejected $25,000
 settlement offer;

 (3) Benchmark's reference during opening statement to Coronado's
 assignment of claims to Plaintiffs, and to the fact that Coronado would not
 have to pay the judgment in the Underlying Lawsuit;13

 (4) Plaintiffs' need to object on four occasions during Benchmark's opening
 statements because counsel was arguing the case, and not stating facts;

 (5) Benchmark's inquiry of Plaintiffs' expert witness about whether he was
 aware of any other bad faith lawsuits having been filed against Benchmark;

 (6) Benchmark's questions of its own expert witness which repeatedly
 allowed the witness to volunteer evidence suggesting that Plaintiffs had the
 intent to "set up" the bad faith claim, and which required Plaintiffs to object
 on three occasions, based on our review of the record;

 13
 Benchmark argues that the trial court reserved ruling on Plaintiffs' motion in limine seeking to exclude
reference to Coronado's assignment. While that is true, the trial court plainly advised the parties in connection with
this motion in limine that "I'm going to prevent you from opening that door, both sides," and directed any party that
intended to mention Coronado and the assignment to first approach the bench for guidance. Benchmark's reference
to the assignment during opening statement violated this order. Moreover, as previously noted, Benchmark's
contention at trial that Plaintiffs opened the door to reference to the assignment by noting in their opening statement
that Coronado suffered a "financial catastrophe" as a result of the judgment entered in the Underlying Lawsuit was
rejected by the trial court.

 18
 (7) Benchmark's reference during closing argument to the fact that Coronado
 had not testified, and that there was no evidence that she "shed a tear" or that
 her life was "really affected" by the judgment against her; and

 (8) Benchmark's attempt to argue against awarding damages in excess of the
 outstanding judgment during closing argument despite the fact that the issue
 of punitive damages had been bifurcated at Benchmark's request.

Though Plaintiffs' point suggests that each of these identified incidents involved

Benchmark's violation of a pretrial ruling or order, that is not the case. The four objections

Plaintiffs made during Benchmark's opening statement because counsel was arguing the

case and not simply stating facts were not based on violated pretrial rulings or orders, and

were instead objections of a nature routinely made at trial. We will not consider those

objections, therefore, and limit our discussion about whether the trial court abused its

discretion in denying Plaintiffs' motion for new trial to the remaining incidents identified

in the point on appeal which combined to require nine objections at trial.14

 "Repeatedly asking improper questions, offering improper evidence, or displaying

material not in evidence may constitute misconduct sufficient for the granting of a new

trial." Coyle v. City of St. Louis, 408 S.W.3d 281, 287 (Mo. App. E.D. 2013) (citing Ryan,

 14
 Arguably, the disposition of Plaintiffs' objection following Benchmark's counsel's reference during
opening statement to a rejected $25,000 settlement offer also does not fall squarely within the claim of error
identified in Plaintiffs' first point on appeal. Though the objection alleged a violation of the trial court's pretrial
ruling excluding settlement discussions that led to Coronado's execution of the assignment to Plaintiffs, it is not
clear from the record that the rejected $25,000 settlement offer was a part of these discussion. And in any event, it
appears from the record that the trial court sustained Plaintiffs' objection based on "basic law" forbidding the
discussion of settlement negotiations in the presence of a jury, and not because Benchmark's comment violated a
pretrial ruling. Sherrer v. Boston Scientific Corp., 609 S.W.3d 697, 716 (Mo. banc 2020) ("[I]t is well-established
that evidence of settlement negotiations is generally inadmissible . . . "). However, our review of the record reflects
that Benchmark's counsel tried to argue in response to Plaintiffs' objection that he was permitted to discuss the
rejected $25,000 settlement offer because (according to him) it was not within the scope of the trial court's pretrial
ruling. Under the circumstances, we believe it fair to characterize Plaintiffs' objection as falling within the scope of
Plaintiffs' claim that it was error to deny their motion for new trial based on Benchmark's intentional violation of the
trial court's pretrial rulings and orders.

 19
304 S.W.2d at 828). A mistrial or a new trial may be required where such acts by counsel

"constitute a willful attempt to present improper matters to the jury, or to create significant

and improper inferences, or to force one's opponent to be placed in the light of suppressing

facts by his objections." Id. (quoting Liszewski, 941 S.W.2d at 753). "In each such case

the final question is whether the conduct substantially influenced the verdict, despite the

action taken at the time by the court, in sustaining objections or otherwise." Id. (quoting

Liszewski, 941 S.W.2d at 753-54).

 The trial court denied Plaintiffs' motion for new trial on the basis of Benchmark's

counsel's repeated efforts to admit evidence in violation of pretrial rulings for two reasons.

First, the trial court found that Plaintiffs waived this claim of trial error because they failed

to request a mistrial. Second, the trial court found that the alleged misconduct did not

substantially influence the verdict. The trial court did not abuse its discretion.

 "It 'has repeatedly been held that when the trial court sustains an objection to

improper argument, and no further remedial action is requested, no error is preserved for

appellate review.'" Sanders v. Ahmed, 364 S.W.3d 195, 211 (Mo. banc 2012) (quoting

Olsten v. Susman, 391 S.W.2d 328, 330 (Mo. 1965)); see also Miller v. Levering Reg'l

Health Care Ctr., LLC, 202 S.W.3d 614, 619 (Mo. App. E.D. 2006) (holding that post-trial

request for new trial was waived where the trial court sustained an objection at trial that

counsel was eliciting testimony in violation of a pretrial in limine ruling because the

objecting party "failed to make a timely request for further relief"). In Olsten, our Supreme

Court found no abuse of discretion in a trial court's denial of a motion for new trial based

on improper argument of counsel that "flouted" the court's earlier rulings where the

 20
objecting party requested and was granted a mistrial, and then withdrew the request for a

mistrial. 391 S.W.2d at 329-30. As the Supreme Court found:

 In this case it is not a situation where plaintiff failed to request remedial
 action. He made the request, it was granted, and he then expressly and
 understandingly withdrew the request and elected to take his chances with
 the jury. The trial court granted to plaintiff all the remedial action requested
 or desired. Under these circumstances the trial court did not err when it
 refused to grant plaintiff a new trial because of the improper argument of
 defendant's counsel.

Id. at 330. When faced with attorney misconduct in the form of improper argument or

interrogation, a "party may not complain on appeal that the trial court should have done

more than requested." Id. "In failing to request a mistrial at the time of the alleged

impropriety, [a party] implicitly decide[s] that the argument complained of was not so

grievous as to require drastic action. A party is not entitled, in such a situation, to gamble

on the verdict of the jury, and if he loses then assert in a motion for new trial or on appeal

that prejudicial error resulted from the incident." McNear v. Rhoades, 992 S.W.2d 877,

883 (Mo. App. S.D. 1999) (citations omitted).

 In every instance of misconduct about which Plaintiffs complain, the trial court

sustained Plaintiffs' objection, and where requested, instructed the jury to disregard the

improper testimony or argument. Plaintiffs never requested the additional relief of a

mistrial--despite the trial court's strong suggestion that this relief would be granted if sought

when it admonished Benchmark's counsel ". . . you've done this and this is pretty blatant. .

. . I don't want to declare a mistrial unless it's requested . . ." (Emphasis added.) The

trial court did not abuse its discretion, therefore, when it concluded that Plaintiffs' election

not to request a mistrial resulted in the waiver of their right to seek a new trial after the jury

 21
reached an unfavorable verdict. See Sanders, 364 S.W.3d at 211 (quoting Olsten, 391

S.W.2d at 330); McNear, 992 S.W.2d at 883.

 Plaintiffs concede that under settled Missouri law, they waived their right to claim

error arising out of the trial court's refusal to order a new trial based on lawyer misconduct

when they elected not to seek a mistrial. They rely on Blair v. Wills, 420 F.3d 823, 830

(8th Cir. 2005), to ask us to create an exception to Missouri's settled waiver rule. In Blair,

a boarding school student brought suit against his boarding school and several of its

employees under 42 U.S.C. section 1983 for violations of his constitutional rights, under

the Fair Labor Standards Act ("FLSA") for forced work without pay, and for false

imprisonment and battery. Id. at 825. Following pretrial rulings, the only claims that

remained to be tried were the student's battery claim against a single defendant, Bo

Gerhardt ("Gerhardt"), and the student's FLSA claims against all of the defendants. Id.

The defendants filed a motion in limine seeking to exclude highly inflammatory evidence

that they argued was irrelevant to the remaining claims, and the trial court sustained the

motion. Id. at 830. Gerhardt "properly objected in open court to questioning by Blair's

counsel" that violated this pretrial ruling fifty-two times over two days. Id. Though the

trial court sustained each objection, it "did not strike the offending question or immediately

instruct the jury to disregard the irrelevant information." Id. After a two-and-a-half-day

trial, the jury found Gerhardt liable for battery and awarded Blair $20,000. Id. Gerhardt

appealed, arguing that the trial court "abused its discretion in refusing to grant his motion

for a new trial" because "Blair's attorney repeatedly introduced irrelevant and prejudicial

matters into the proceedings and that this misconduct was so severe that he [was] entitled

 22
to a new trial." Id. at 829. The Eighth Circuit held that "the combined effect of [Blair's

questions] was to present to the jury an abundance of irrelevant evidence that had no

bearing on the merits of the remaining claims and served only to prejudice the jury against

Gerhardt." Id. at 830.

 Plaintiffs argue that Blair supports the creation of an exception to Missouri's settled

rule that a request for a new trial based on attorney misconduct is waived where a mistrial

is not sought prior to submission of a case to the jury. However, Blair makes no mention

of Missouri's waiver rule; does not purport to be interpreting or applying state law on the

issue of preserving the right to seek appellate review of the denial of a motion for new trial;

and expresses no opinion of the effect of a party's failure to request a mistrial. Id. at 829-

30. Blair cannot be read to recognize an exception to a rule it never mentions.

 More to the point, Plaintiffs' reliance on Blair misses the mark. There is no need to

recognize an exception to the waiver rule. Though Plaintiffs' failure to request a mistrial

waived their right to complain on appeal about the trial court's denial of their motion for

new trial, the trial court had the authority, despite the waiver, to grant Plaintiffs' motion for

new trial if it was convinced that Benchmark's counsel's misconduct "was prejudicial and

substantially influenced the verdict." Liszewski, 941 S.W.2d at 753 (citing Ryan, 304

S.W.2d at 827). In Ryan, the Supreme Court affirmed a trial court's grant of a new trial

based on attorney misconduct, even though no request for mistrial had been sought,

because "[a]fter much consideration, we are unable to say that in [finding counsel's

misconduct to be prejudicial], [the trial court] abused the discretion permitted to it." 304

S.W.2d at 830. But, in so concluding, the Supreme Court observed:

 23
 In view of all the 'misconduct' now charged by court and counsel it would
 have been much preferable for the trial court to have declared a mistrial of
 its own motion, when these things occurred, rather than to do so
 retroactively; and, likewise, much better for respondent's counsel to have
 then moved for a mistrial instead of speculating on a favorable verdict. The
 court has said in its order that it was 'reluctant to declare a mistrial' because
 of the long time which had elapsed since the accident. No time has been
 saved by the present procedure. . . .We are affirming the ruling because we
 feel that the trial court had and has the right, based on the conduct specified,
 and in the exercise of a duty to see that justice is done, to find that plaintiff
 was deprived of a fair trial. It has so found.

Id. at 831.

 We need not recognize, therefore, an exception that was already available to the trial

court had it found that Benchmark's counsel's misconduct was prejudicial and substantially

influenced the verdict. The trial court expressly found to the contrary, however. It found

that the Plaintiffs had not made a showing that Benchmark's counsel's misconduct had an

impact on the jury's verdict, and noted that "the jury deliberated for only one hour before

returning a verdict for [Benchmark]." The trial court heard "'the evidence concerning the

alleged misconduct and [was], therefore, in the best position to determine the credibility

and intent of the parties and to determine any prejudicial effect of the alleged misconduct.'"

Waters v. Meritas Health Corp., 478 S.W.3d 448, 454 (Mo. App. W.D. 2015) (quoting

Mathis v. Jones Store Co., 952 S.W.2d 360, 364 (Mo. App. W.D. 1997)).

 Plaintiffs do not contest that substantial evidence supported the jury's verdict. And

Plaintiffs do not quarrel with the trial court's conclusion that they failed to make a showing

 24
that Benchmark's counsel's misconduct was prejudicial and had a substantial impact on the

jury's verdict.15

 Instead, Plaintiffs ask this court to declare as a matter of first impression that where

attorney misconduct involves the violation of pretrial rulings, prejudice should be

presumed, shifting the burden to the offending party to refute the prejudicial impact of the

misconduct. Plaintiffs ask this court to extend by analogy Travis v. Stone, 66 S.W.3d 1

(Mo. banc 2002), which recognized that where a juror gathers extraneous evidence or

information by visiting an accident scene, prejudice is presumed and must be overcome by

the party who benefitted from the jury's verdict. Id. at 4-5. Travis is inapposite.

 The holding in Travis was premised on the fact that a juror's intentional efforts to

gather evidence or information extraneous to the trial in order to reach a verdict inherently

"evidenc[es] a disposition not to be governed by the evidence adduced in court, . . . such

that prejudice to . . . the losing party[] must be presumed." Middleton v. Kansas City Pub.

Serv. Co., 152 S.W.2d 154, 158 (Mo. 1941) (cited with approval and as controlling in

Travis, 66 S.W.3d at 4-6). This foundational premise does not apply where an attorney's

misconduct involving the violation of pretrial rulings is met with sustained objections and

curative instructions, that leave no basis to conclude that the jury evidenced a disposition

not to be governed by the evidence properly adduced in court. We therefore reject

Plaintiffs' invitation to announce a new rule that would shift the burden of proof on the

 15
 Even Benchmark's blatant reference to settlement during opening statement would not necessarily have
been enough to require us to find that the trial court abused its discretion in denying a motion for new trial, given
Plaintiffs' counsel's decision not to seek a mistrial before the case was submitted to the jury. See, e.g., Sherrer, 609
S.W.3d at 716 (finding no manifest abuse of discretion where trial court denied timely motion for mistrial made
after opposing party improperly displayed a slide to the jury that referred to settlements reached with other parties).

 25
issue of prejudice where attorney misconduct involves the violation of pretrial rulings. See

Liszewski, 941 S.W.2d at 753-54 (holding that it was not error to deny motion for new trial

based on opposing attorney's repeated violations of trial court's in limine rulings and

repeated efforts to ask prejudicial and irrelevant questions of a witness, as "[i]n each such

case the final question is whether the conduct substantially influenced the verdict, despite

the action taken at the time by the court, in sustaining objections or otherwise").

 The trial court did not abuse its discretion in denying Plaintiffs' motion for new trial.

We are mindful that the trial court's comments at trial suggest that the trial court shared

Plaintiffs' view that Benchmark's counsel intentionally disregarded pretrial rulings and

orders. And we are mindful of Plaintiffs' expressed concern that unless a new trial is

required in this case, an attorney who intentionally disregards pretrial rulings and

rudimentary evidentiary principles is left emboldened by the misconduct, and suffers no

consequence. However, we do not agree that Benchmark's counsel's conduct was

susceptible to neither remedy nor consequences. The conduct was susceptible to a remedy

that Plaintiffs chose not to seek, a mistrial. Though inconvenient, the remedy of a mistrial

would have imposed no greater burden on Plaintiffs than the relief of a new trial sought in

their motion for new trial. Ryan, 304 S.W.2d at 831. In addition, Benchmark's counsel's

behavior, if intentional, is subject to consequences by virtue of the Rules of Professional

Conduct which prohibit intentional violations of a trial court's pretrial rulings.16

 16
 In ruling on Plaintiffs' motion for new trial, the trial court did not make an express finding that
Benchmark's counsel's conduct at trial intentionally violated the trial court's pretrial rulings and orders, though the
ruling appears to presuppose that premise before concluding that Benchmark's counsel's misconduct did not
substantially influence the jury's verdict and was in any event waived by Plaintiffs' failure to request a mistrial.
However, the trial court's on-the-record characterizations of Benchmark's counsel's conduct during the trial strongly

 26
 Point One is denied.

Point Two

 In Plaintiffs' second point on appeal, they argue that the trial court erred in denying

their motion for new trial because Benchmark improperly argued an adverse inference from

Coronado's failure to testify about her damages at trial when, during Benchmark's closing,

counsel argued: ". . . the damages you're supposed to assess are what [Coronado] suffered,

and we've never heard from her. Did she shed a tear? Did this really affect her life? . . ."17

Plaintiffs rely on Kelly by Kelly v. Jackson, 798 S.W.2d 699, 701 (Mo. banc 1990), to argue

that it was reversible error to allow reference in closing argument to Plaintiffs' failure to

produce a witness where the witness is equally available to both parties. And Plaintiffs

rely on Calvin v. Jewish Hospital of St. Louis, 746 S.W.2d 602, 605 (Mo. App. E.D. 1988),

to argue that because Coronado's testimony regarding her emotional damages was excluded

as evidence at trial based on Benchmark's motion in limine, it was misconduct constituting

manifest injustice and reversible error for Benchmark to seek an adverse inference from

Plaintiffs' failure to present this testimony from Coronado.

 Regarding the first argument, "[o]n appeal, a party is held to the specific objections

presented to the trial court. An objection not presented to the trial court is not to be

suggest that the trial court viewed the conduct to be blatant and intentional. Counsel's arguments and responses to
questions during oral argument in this case lend support to the trial court's apparent view. An attorney has an ethical
obligation to follow court orders and rules. See Rule 4-3.4. An attorney is prohibited from engaging in conduct
intended to disrupt a tribunal. See Rule 4-3.5(d). An attorney engages in professional misconduct if the attorney
engages in conduct that is prejudicial to the administration of justice. See Rule 4-8.4(d).
 17
 Respondents argue that Plaintiffs "opened the door" to Benchmark's argument referencing Coronado's
absence at trial when Plaintiffs referred during its closing to the Coronado's "financial catastrophe;" to the fact that
Coronado and her family suffered consequences from the judgment in the Underlying Lawsuit; and to the fact that
Coronado was in "a financially disastrous situation" due to the judgment. The trial court was not persuaded by this
same response to Plaintiffs' objection at trial, and neither are we.

 27
considered on appeal." Robinson v. Empiregas Inc. of Hartville, 906 S.W.2d 829, 836

(Mo. App. S.D. 1995). After Benchmark referred to the absence of Coronado's testimony

regarding her damages, Plaintiffs' counsel argued that "[Benchmark] filed a motion in

limine saying that I couldn't present any evidence of her damages, and now he gets up and

argues that we didn't hear any damages from her." This was not an objection on the basis

that Coronado was equally available to Benchmark. Rather, Plaintiffs' objection addressed

their second argument -- that Benchmark engaged in misconduct by requesting an adverse

inference from Coronado's failure to testify about a subject Benchmark successfully

excluded from the evidence at trial. Because Plaintiffs "did not make the 'equally available'

objection at trial, [they] cannot present it on appeal." Robinson, 906 S.W.2d at 836.

 Plaintiffs' second argument relies on Calvin to contend that an attorney's improper

reference to a witness's failure to testify when that witness's testimony was excluded on

that attorney's motion constitutes a manifest injustice and prejudicial error, requiring

reversal as a matter of law. 746 S.W.2d at 605. Calvin does not so hold.

 In Calvin, the trial court first found it to be an abuse of discretion to enter a pretrial

ruling excluding the testimony of an expert witness, and then found the prejudicial effect

of exclusion of the expert's testimony to have been exacerbated when the party who secured

exclusion of the witness argued an adverse inference from the witness's absence, and when

the trial court overruled an objection to the adverse inference argument. Id. at 604-05. The

Eastern District explained that having already determined that the trial court's pretrial

ruling excluding the witness was an abuse of discretion, the trial court "[p]ermitting, indeed

implicitly approving, the argument that the [party] could not obtain the very evidence it

 28
attempted to introduce compounded the prejudice resulting from the unequal pre-trial

rulings." Id. at 605. Calvin thus did not hold, and cannot be read for the proposition that,

a new trial must be awarded as a matter of law every time an attorney wrongfully comments

on the absence of an adverse witness after first securing a ruling excluding that witness's

testimony.

 That is particularly so where a limiting instruction has been given to the jury to

disregard closing argument that improperly suggests an adverse inference be drawn from

a witness's absence. In Campise v. Borcherding, a party relied on Calvin v. Jewish Hospital

to make the same argument advanced here by Plaintiffs. Campise, 224 S.W.3d at 95 (citing

Calvin, 746 S.W.2d at 605). The Eastern District held "we cannot find any endorsement

in Calvin of the principle that a limiting instruction is insufficient to remedy an improper

adverse inference as a matter of law or any statement from which this principle would

follow." Id.; see also Gaffney v. Cmty. Fed. Sav. & Loan Ass'n, 706 S.W.2d 530, 535 (Mo.

App. E.D. 1986) (finding no abuse of discretion in denial of request for a mistrial where

trial judge struck counsel's argument improperly referring to absent witness given "the

broad discretion held by the trial court, its superior position in assessing the impropriety of

the argument, and the fact the trial court did not overrule [the party's] objection"). "A

limiting instruction may be sufficient to avoid prejudice, and the trial court is in the best

position to determine the impact on the jury." Campise, 224 S.W.3d at 95 (citation

omitted).

 Here, the trial court sustained Plaintiffs' objection and, at Plaintiffs' request, gave a

limiting instruction that directed the jury to disregard Benchmark's counsel's reference to

 29
Coronado's absent testimony, and further told the jury that such evidence had been

previously limited by the court. Just as in Campise, though Benchmark's counsel's

statement during closing "smacks of [improper] adverse inference," we cannot find that the

trial court abused its discretion when it denied Plaintiffs' motion for new trial. Id. at 94.

That conclusion is bolstered by the fact that, as previously explained, Plaintiffs waived the

ability to seek a new trial after the jury reached its verdict when they elected not to request

a mistrial in response to Benchmark's counsel's misconduct in disregarding pretrial rulings.

 In Plaintiffs' reply brief, they argue for the first time that the trial court's limiting

instruction in response to Benchmark's improper reference to Coronado's absence was

insufficient because it did not inform the jury that it was Benchmark who sought to exclude

this evidence all along, and did not include a severe reprimand of Benchmark's counsel.

This argument was not raised with the trial court at the time of the limiting instruction, was

not raised as a claim of error in the Plaintiffs' motion for new trial, and was not raised as a

claim of error in Plaintiffs' opening brief. Putting aside that this argument has not been

preserved for our review because it was never raised with the trial court, the argument is

independently ineligible for appellate review because it was first raised in Plaintiffs' reply

brief. Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy, 499 S.W.3d 321, 326 n.3

(Mo. App. W.D. 2016) ("[W]e do not review an assignment of error made for the first time

in the reply brief.") (internal quotation marks omitted).

 The trial court did not abuse its discretion in denying Plaintiffs' motion for new trial

based on Benchmark's counsel's improper attempt during closing to suggest that the jury

draw an adverse inference from Coronado's failure to testify.

 30
 Point Two is denied.

 Conclusion

 The trial court's denial of Plaintiffs' motion for new trial is affirmed.

 Cynthia L. Martin, Judge

All concur

 31